Demar NILSON, Plaintiff–Appellant,

v.

LAYTON CITY and Rex Brimhall,
Defendants–Appellees.

No. 94–4077.

United States Court of Appeals,
Tenth Circuit.

Jan. 6, 1995.

Robert H. Copier, Salt Lake City, UT, for plaintiff/appellant.

Anne Swensen (Julianne P. Blanch, with her on the briefs) of Snow, Christensen & Martineau, Salt Lake City, UT, for defendants/appellees.

Before SEYMOUR, Chief Judge, LOGAN, and EBEL, Circuit Judges.

SEYMOUR, Chief Judge.

Demar Nilson brought this 42 U.S.C. § 1983 action alleging violations of his constitutional right to privacy because a Layton City official publicized an expunged portion of his criminal record. In a bench trial, the district court rejected Mr. Nilson's claim, and he appeals. We affirm.

## I.

In 1981, while a school teacher in the Davis County School District, Mr. Nilson pled no contest to forcible sexual abuse charges. Although charged in Davis County, Mr. Nilson was arrested and booked in Layton. The court sentenced him to one year of suspended jail time, indefinite probation, and a $1,000 fine. The Davis County School District terminated Mr. Nilson's employment, and the state revoked his teaching certificate for approximately one year. In 1984, the Jordan School District in Salt Lake County hired Mr. Nilson. On motion of Mr. Nilson, a district judge in Davis County entered an Order of Expungement on July 23, 1990, pursuant to Utah Code Ann. § 77–18–2 (1990).[1] The court never filed the expungement order with Layton or any Layton official.

The Jordan School District began receiving information and complaints regarding Mr. Nilson's prior criminal history in 1990. Soon thereafter, the Salt Lake County Sheriff's Office learned of Mr. Nilson's past con-

---

1. Utah Stat.Ann. § 77–18–2(5)(a) (1990) (repealed 1994) states in relevant part: "The Utah Bureau of Criminal Identification shall keep, index, and maintain all expunged and sealed records of arrests and convictions. Any agency or its employee who receives an expungement order may not divulge any information in the sealed expunged records."

viction and received new complaints of sexual abuse by Mr. Nilson. Salt Lake County began investigating these new sexual abuse allegations and charged Mr. Nilson in 1991 with forcible sexual abuse.

On October 23, 1991, Sergeant Brimhall of the Layton Police Department discussed Mr. Nilson's prior conviction with Steve Eager of KSL–TV. As a Layton police officer in 1981, Sergeant Brimhall had first-hand knowledge of Mr. Nilson's arrest and conviction. However, because no one filed the expungement order with any Layton official or agency, the Layton records did not provide knowledge of the expungement, and it is unclear from the district court's findings whether Sergeant Brimhall actually knew of the expungement. Following his discussion with Sergeant Brimhall, Mr. Eager reported on the evening news that Layton had arrested and convicted Mr. Nilson for child abuse in 1981 and that some time thereafter his record was expunged. Also on the October 23 broadcast, two of Mr. Nilson's former Davis County students anonymously claimed to be victims of his sexual abuse. The charges and the news broadcast received substantial publicity.

Although Mr. Nilson was not convicted of the 1991 charges, the Jordan School District terminated his employment in 1992. Mr. Nilson then filed this section 1983 action against Layton and Sergeant Brimhall, alleging that Sergeant Brimhall's post-expungement interview with Mr. Eager and the ensuing media publicity violated his constitutional right to privacy. The district court concluded that neither Layton nor Sergeant Brimhall had first-hand knowledge of the expungement order and therefore did not violate Utah Stat.Ann. § 77–18–2(5)(a). Because defendants were not liable under section 77–18–2, the court further concluded, they could not be held liable under section 1983.[2]

## II.

■ On appeal, Mr. Nilson argues that the district court's analysis was misguided. He contends that the constitutionally-rooted right to privacy is a question of federal law, and the relevant inquiry is whether he had a legitimate expectation of privacy in his expunged criminal records. Mr. Nilson further argues that the Utah expungement statute created a legitimate expectation of privacy, and violations thereof implicated his constitutional right to privacy. We agree with Mr. Nilson's assertion that the constitutional right of privacy is a question of federal law, but we disagree that he had a legitimate expectation of privacy in his expunged criminal records.

■ Whether Sergeant Brimhall's post-expungement disclosure of Mr. Nilson's criminal history violated Mr. Nilson's right to privacy is a question of law which we review de novo. *Estate of Holl v. Commissioner of Internal Revenue,* 967 F.2d 1437, 1438 (10th Cir.1992). The Due Process Clause of the Fourteenth Amendment protects individuals from state intrusion on fundamental aspects of personal privacy. *See Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). The Supreme Court has held that the right to privacy safeguards individuals from government disclosure of personal information. *See Nixon v. Administrator of Gen'l Serv.,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977); *Whalen v. Roe,* 429 U.S. 589, 599 & n. 24, 97 S.Ct. 869, 876 & n. 24, 51 L.Ed.2d 64 (1977). In determining whether information is of such a personal nature that it demands constitutional protection, we must consider "(1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 435 (10th Cir.1981). Because the alleged unconstitutional conduct in this case fails to meet the first prong of this test, we hold that Mr. Nilson has no constitutional right to privacy in his expunged criminal record.

---

**2.** The district court also found that Sergeant Brimhall's media disclosures did not proximately cause Mr. Nilson's injuries. Because we conclude that the constitutional right to privacy does not protect Mr. Nilson's expunged criminal record, we do not reach the causation issue.

Expectations of privacy are legitimate if the information which the state possesses is highly personal or intimate. *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir. 1986). Information readily available to the public is not protected by the constitutional right to privacy. Consequently, government disclosures of arrest records, *see Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), judicial proceedings, *see Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975), and information contained in police reports, *see Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 207 (3d Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992), do not implicate the right to privacy.

Furthermore, a validly enacted law places citizens on notice that violations thereof do not fall within the realm of privacy. *Mangels,* 789 F.2d at 839. Criminal activity is thus not protected by the right to privacy. In *Mangels,* the Denver Fire Department publicized in the media its dismissal of two employees for drug usage. The firefighters argued that the disclosure of this information implicated their right to privacy. We concluded that information concerning unlawful activity "is not encompassed by any right of confidentiality, and therefore it may be communicated to the news media." *Id.* at 839 (footnote omitted) (citing *Paul v. Davis,* 424 U.S. at 712–13, 96 S.Ct. at 1165–66). In our judgment, the holding in *Mangels* controls here. Mr. Nilson pled no contest to charges of forcible sexual abuse in 1981. Laws proscribing sexual abuse place Mr. Nilson on notice that violations thereof do not fall within the constitutionally protected privacy realm. Consequently, Sergeant Brimhall's interview with Mr. Eager, during which he discussed the 1981 sexual abuse charges and conviction, did not breach Mr. Nilson's privacy rights.

The 1990 expungement order does not change this conclusion. An expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public. Court records and police blotters permanently document the expunged incident, and those officials integrally involved retain knowledge of the event. An expunged arrest and/or conviction is never truly removed from the public record and thus is not entitled to privacy protection. Mr. Brimhall, as an officer in the Layton police department in 1981, had first-hand knowledge of Mr. Nilson's arrest and conviction. The expungement order did not erase this knowledge. We hold that Mr. Nilson did not have a legitimate expectation of privacy in his expunged criminal records.

Mr. Nilson argues that the Utah expungement statute created the legitimate expectation of privacy, and that Sergeant Brimhall's violation of the statute consequently implicated his privacy rights. We disagree. Substantive due process rights are founded not upon state law but upon "deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels,* 789 F.2d at 839 (citing *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 228–30, 106 S.Ct. 507, 515–16, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). While state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they "fall far short of the kind of proof necessary" to establish a reasonable expectation of privacy. *Flanagan v. Munger,* 890 F.2d 1557, 1571 (10th Cir.1989). Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim. The disclosed information itself must warrant constitutional protection. *See Paul v. Davis,* 424 U.S. at 713, 96 S.Ct. at 1166. We have already concluded that Mr. Nilson's criminal history, despite the expungement order, is not protected by the constitutional right to privacy. It is therefore irrelevant to our inquiry whether Sergeant Brimhall violated the Utah expungement statute.

For the reasons stated in this opinion, we AFFIRM the district court's decision.[3]

3. Mr. Nilson argues that the district court erred in failing to assess damages for harm stemming from Sergeant Brimhall's disclosure. Because damages follow liability, we do not address this claim.