No. 95-3418

David Eagle,                            *
                                        *
          Plaintiff - Appellee,          *
                                        *
v.                                      *
                                        *
John D. Morgan, Individually and in his *
official capacity as officer of the     *
Jonesboro Police Department; Donna      *
Bogard, Individually and in her official*
capacity as officer of the Jonesboro    *
Police Department; David Allen,         *
Individually and in his official         *   Appeal from the United
capacity as officer of the Jonesboro    *   States District Court
Police Department; Terry Grooms,        *   for the Eastern
Individually and in his official         *   District of Arkansas.
capacity as officer of the Jonesboro    *
Police Department; Jack McCann,         *
Individually and in his official         *
capacity as officer of the Jonesboro    *
Police Department; Rohnny McDaniel,     *
Individually and in his official         *
capacity as officer of the Jonesboro    *
Police Department,                      *
                                        *
          Defendants - Appellants,       *
                                        *
John Doe, an unknown person,            *
                                        *
          Defendant,                     *
                                        *
City of Jonesboro,                      *
                                        *
          Defendant - Appellant.         *


                 Submitted:  March 14, 1996

                    Filed:  July 8, 1996

Before MAGILL, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

David Eagle filed this suit against the City of Jonesboro (the "City") and various police officers employed by that municipality, seeking relief under 42 U.S.C. § 1983 (1994) and Arkansas tort law. The City and the officers presently appeal the district court's refusal to grant their motion for summary judgment. We reverse in part, dismiss in part, and remand for further proceedings.

I.   BACKGROUND

In 1987, Wayne Ridout, a businessman from Searcy, Arkansas, informed local authorities that David Eagle had stolen enough lumber from Ridout's store to partially construct a new two-story home. Following a police investigation into the complaint, Eagle pleaded guilty in an Arkansas trial court to felony theft of property. Eagle had no prior criminal record and entered his plea pursuant to an enactment that allows Arkansas judges to indefinitely defer further proceedings and place first time felons on a tentative term of probation. See Ark. Code Ann. § 16-93-303(a)(1) (Michie Supp. 1996). If the defendant violates the requirements of his probation, the judge may declare him guilty and impose the punishment otherwise provided by law. Id. § 16-93-303(a)(2). On the other hand, the statute directs the court to dismiss the case and expunge the defendant's record if he "fulfill[s] . . . the terms and conditions of probation or [is] release[d] by the court prior to the termination period thereof." Id. § 16-93-303(b). Moreover, these measures occur "without court adjudication of guilt." Id.

The trial court accepted Eagle's plea and required him to

2

spend forty-five days in the county jail, serve six years probation, and pay $25,000 in restitution to Ridout. Approximately three years later, a state judge terminated Eagle's probation and entered an order expunging his criminal record. The expungement decree expressly provided that it "restored [Eagle] to [his] civil and constitutional rights as if [the felony theft of property] had never been committed," and as a matter of law it "completely exonerate[d] [Eagle] of any criminal purpose."[1] Ark. Code Ann. § 16-93-303(b)(2) (Michie 1987), amended by Ark. Code Ann. § 16-93-303(b) (Michie Supp. 1996). Additionally, the state legislature has decreed that an expunged record should be treated as confidential and released only to the individual whose record was expunged and, in certain circumstances, to judicial or law enforcement personnel. Ark. Code Ann. § 16-90-903 (Michie Supp. 1996).

After the state court struck the felony theft of property from Eagle's record, he began working as an auditor for the City. In the course of his employment, Eagle performed an audit of certain Jonesboro Police Department ("JPD") records and conducted a police salary survey to determine whether local officers were receiving competitive wages. The fruits of Eagle's labor, however, apparently displeased some law enforcement workers; several curious officers accessed the National Crime Information Center ("NCIC") and the Arkansas Crime Information Center ("ACIC") computer systems in an effort to confirm rumors that Eagle had a felony record. State guidelines governing the use of the ACIC system dictate that the computer network should, as relevant here, only be available to "criminal justice agencies in their official capacity," Ark. Code

---

[1]The Arkansas General Assembly recently modified slightly the effects of an expunged conviction and altered the procedure through which a criminal defendant may obtain an expungement order. Compare Ark. Code Ann. 16-90-902, -904 to -905 (Michie Supp. 1996) with Ark. Code Ann. 16-93-301, -303(b) (Michie 1987)(amended 1995). These changes in state law are immaterial to our disposition of this appeal.

Ann. § 12-12-211(a) (Michie 1995), and the pertinent federal provision restricts NCIC access to "criminal justice agencies for criminal justice purposes," 28 C.F.R. § 20.33(a)(1) (1995). Despite these restrictions, JPD was not carrying on an official investigation of Eagle's criminal activity at the time the officers in this case made their inquiries. Further, because the responsible authorities had failed to file notification of the expungement of Eagle's record, the report obtained by the officers did not indicate that the listed felony offense had been stricken.

This information regarding Eagle's criminal history was for some time also available from at least one other source. Before receiving belated notice that the felony had been removed from Eagle's record, the Arkansas State Police, in response to requests made pursuant to the Arkansas Freedom of Information Act, released to certain members of the public, including at least four reporters, unaltered copies of Eagle's criminal case file.

On August 16, 1993, in an admitted effort to "throw doubt on [Eagle's police salary] survey results," appellant Rohnny McDaniel at a Jonesboro City Council meeting revealed the auditor's criminal history by publicly reading the following excerpt from Eagle's case file:

> At approximately 6:00 p.m. on Thursday, January 15, 1987, an investigator met with the Deputy Prosecuting Attorney and was advised that he had received information of a possible theft of materials from Ridout Lumber Company. According to the Deputy Prosecutor, it was believed that David Eagle had stolen building materials. On March 5, 1987, David Eagle pled guilty to one count of 41-2203, theft of property.

Interestingly, McDaniel is the only individual appellant who did not personally access the NCIC/ACIC computer systems to verify the rumors about Eagle, but Eagle maintains that McDaniel gained his knowledge through the efforts of his police colleagues.

4

Eagle subsequently initiated this action against sundry JPD officers, individually and in their official capacities, and the City. Eagle asserts that the individual state actors violated his constitutional right to privacy when they conducted unjustified searches on the ACIC/NCIC computer databases and by causing the public disclosure of information about his expunged criminal record. Also, he contends that the City is liable because these constitutional violations were a result of the municipality's failure to properly train its employees in the use of the computer networks and because the alleged invasion of privacy occurred pursuant to an official custom or policy. Finally, Eagle declares that the officers' conduct constitutes the Arkansas tort of outrage.[2]

Claiming that Eagle's federal privacy claim does not describe a constitutional violation and, alternatively, that qualified immunity should protect the individual employees from liability, the officers and the City moved for summary judgment on this 42 U.S.C. § 1983 cause of action. In addition, they argued that the officials' behavior was not tortious under Arkansas' law of outrage. The district judge, relying on this Court's decision in Alexander v. Peffer, 993 F.2d 1348 (1993), determined that the facts, when construed in a manner most charitable to Eagle, stated an unconstitutional intrusion into Eagle's privacy; the judge also decided that the officers are not entitled to qualified immunity, and he thus refused to summarily dispose of this § 1983 claim. Moreover, while the district judge was "strongly inclined to

---

[2]Eagle's First Amended Complaint appears to include certain claims in addition to those mentioned in the text. For example, Eagle seems to allege that the officers violated his First Amendment right to free speech. See First Amended Complaint, Count III. Additionally, he evidently seeks to impose liability under state law for a tortious invasion of his privacy. See id. at Count VII. Inexplicably, though, these causes of action are not mentioned in the parties' summary judgment submissions or in the district court's order. It necessarily follows that this opinion does not comment upon these apparent grounds for relief.

believe" that Eagle could not prevail under the tort of outrage, he concluded it would be inappropriate to dismiss this cause of action before giving the auditor an opportunity to present his evidence.

The officers and the City have now filed an interlocutory appeal from the district court's denial of their summary judgment motion. For reversal, they claim that the facts, even when viewed in the light most favorable to Eagle, could not possibly support a finding that they violated his constitutional right to privacy. Also, the individual appellants continue to argue that qualified immunity shields their conduct. Furthermore, the officers insist that the district court improperly refused to grant summary judgment on the pendent state law claim. We consider these allegations seriatim.

## II.   DISCUSSION

### A.    Invasion of Privacy

#### 1.  Jurisdiction

As a preliminary matter, we must address our jurisdiction to consider the officers' assertion that their actions did not amount to a constitutional violation. It is by now axiomatic that the federal appellate tribunals may normally review appeals only from "final decisions" issued by the district courts. See 28 U.S.C. § 1291 (1994); Johnson v. Jones, 115 S. Ct. 2151, 2154 (1995). Due to this statutory limitation upon our jurisdiction, a party is in most cases precluded from interrupting litigation by filing an interlocutory appeal from a district court's ruling. See Johnson, 115 S. Ct. at 2154-55. Of course, an order denying a litigant's motion for summary judgment is not typically considered a "final decision" worthy of immediate appellate attention.

The Supreme Court has held, however, that a district court's

6

refusal to grant a public official's motion for summary judgment based on qualified immunity will, under certain circumstances, qualify as a "collateral order" from which the official may file a prompt appeal. Id. at 2155 (citing Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)). The Court has recently reiterated that this type interlocutory appeal is only appropriate when it involves "abstract issues of law" relating to qualified immunity. Id. at 2158. By contrast, where a public official merely challenges "a portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,'" Id. at 2156, we cannot entertain the appeal. In other words, "a district court's pretrial rejection of a proffered qualified immunity defense is not immediately reviewable if the issue on appeal is whether the pretrial record is sufficient to create a genuine issue of material fact." Veneklase v. City of Fargo, 78 F.3d 1264, 1267 (8th Cir. 1996).

In the case currently before us, we are called upon to decide whether the district court correctly concluded that the facts, when viewed in a light most favorable to Eagle, could substantiate a finding that the JPD officers violated Eagle's right to privacy. This constitutional question is inherently an "abstract issue of law" over which we presently have jurisdiction. Indeed, as a threshold element in any qualified immunity appeal, we must determine, as a matter of law, "whether the plaintiff has alleged the violation of a constitutional right," and "whether that right was clearly established at the time of the alleged violation." Manzano v. South Dakota Dep't of Social Services, 60 F.3d 505, 509 (8th Cir. 1995). To be sure, some factual matters remain disputed. For instance, Eagle contends that McDaniel and his peers at the JPD, acting in concert, were solely responsible for the dissemination of his criminal record, but the officers respond that members of the press also distributed this information. Disagreements such as this do not concern us here. Rather, in resolving this appeal, we will "take, as given, the facts that the

7

district court assumed when it denied summary judgment . . . ." <u>Johnson</u>, 115 S. Ct. at 2159.  As an example, we will assume, as did the district court, that the appellant officers were the only persons who publicly revealed Eagle's criminal history.  Mindful of these principles, we turn to the constitutionality of the officers' conduct.

**2.     The disclosure of Eagle's criminal history**

Eagle asserts that the officers violated his constitutional rights when they announced at the Jonesboro City Counsel meeting that he had previously pleaded guilty to felony theft of property.  The Supreme Court has recognized that notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives.  <u>Whalen v. Roe</u>, 429 U.S. 589, 598 n.23 (1977).  This right to privacy actually encompasses two separate types of interests.  <u>Id</u>. at 598-99.  "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."  <u>Id</u> at 599-600 (footnote omitted).

Only the former concern, which has been characterized as the right to confidentiality, is at issue here.  This protection against public dissemination of information is limited and extends only to highly personal matters representing "the most intimate aspects of human affairs."  <u>Wade v. Goodwin</u>, 843 F.2d 1150, 1153 (8th Cir.), <u>cert. denied</u>, 488 U.S. 854 (1988).  "[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information."  <u>Alexander v. Peffer</u>, 993 F.2d 1348, 1350 (8th Cir. 1993).  To determine whether a particular disclosure satisfies this exacting standard, we must examine the

nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. Sheets v. Salt Lake County, 45 F.3d 1383, 1387-88 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995); see also Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 457-58 (1977)(suggesting that an individual's legitimate expectation of privacy plays a pivotal role in this constitutional analysis). "When the information is inherently private, it is entitled to protection." Fraternal Order of Police, Lodge 5 v. City of Philadelphia, 812 F.2d 105, 116 (3d Cir. 1987).

We acknowledge that the exact boundaries of this right are, to say the least, unclear. Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3d Cir. 1991)("[T]he contours of the confidentiality branch are murky."), cert. denied, 502 U.S. 1095 (1992). In canvassing the relevant cases, however, we discovered that courts have traditionally been reluctant to expand this branch of privacy beyond those categories of data which, by any estimation, must be considered extremely personal. See Sheets, 45 F.3d at 1388 (noting privacy interest in information about spouse learned or observed through marriage); Fraternal Order of Police, 812 F.2d at 115 (recognizing that certain financial records should be afforded constitutional protection); United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980)(extending privacy protection to medical records); York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)("We cannot conceive of a more basic subject of privacy than the naked body."), cert. denied, 376 U.S. 939 (1964). It appears clear to us that the facts over which Eagle asserts a privacy interest are fundamentally different from the information publicized in these other opinions. Instead, the situation in the case sub judice seems more analogous to circumstances in which courts have refused to recognize a legitimate expectation of privacy. See Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995)("Criminal activity is . . . not protected by the right to privacy."); Holman v. Central Arkansas Broadcasting Co., 610 F.2d

9

542, 544 (8th Cir. 1979)("[N]o right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest."); Baker v. Howard, 419 F.2d 376, 377 (9th Cir. 1969)(holding that constitutional right is not implicated even when police officers circulate false rumors that person has committed a crime).

Far from being "inherently private," the details of Eagle's prior guilty plea are by their very nature matters within the public domain. Accordingly, we decide without hesitation that Eagle has no legitimate expectation of privacy in this material. See Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494-95 (1975)("[T]he interests in privacy fade when the information involved already appears on the public record."), quoted in McNally v. Pulitzer Publishing Co., 532 F.2d 69, 77 (8th Cir.), cert. denied, 429 U.S. 855 (1976). In reaching this conclusion, we underscore that Eagle pleaded guilty to a felony in open court. The Supreme Court has explained:

> A trial is a public event. What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

Craig v. Harney, 331 U.S. 367, 374 (1947); see also United States v. McNally, 485 F.2d 398, 402 (8th Cir. 1973)(commenting upon public nature of trial), cert. denied, 415 U.S. 978 (1974). In fact, the concept of open and public court proceedings is a foundational hallmark of our republic. Cf. U.S. Const. amend. VI (specifying that criminal defendants shall enjoy a public trial). It is evident, then, that Eagle can have virtually no expectation of privacy in the events surrounding his guilty plea. See Pulitzer

10

Publishing, 532 F.2d at 77-78 (declining to find constitutional violation where facts disclosed in newspaper article had also been revealed in open court). By freely admitting his transgression in an intrinsically public forum, Eagle acknowledged before all his fellow citizens that he had committed a crime against the laws of Arkansas. He cannot now claim that a subsequent disclosure of this same information constituted a constitutional violation.

We are unpersuaded by Eagle's contention that this result should somehow be different because his criminal record was ultimately expunged. We observe initially that state laws, such as Arkansas' expungement provisions, do not establish the parameters of constitutional rights, like the right to privacy, that are grounded in substantive theories of due process. Bagley v. Rogerson, 5 F.3d 325, 328-29 (8th Cir. 1993). Quite to the contrary, these precepts achieve their scope from "deeply rooted notions of fundamental personal interests derived from the Constitution."[3] Nilson, 45 F.3d at 372 (quotation omitted). With these thoughts in mind, we express our approval of the Tenth Circuit's reasoning in Nilson:

> An expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public. Court records and police blotters permanently document the expunged incident, and those officials integrally involved retain knowledge of the event. An expunged arrest and/or conviction is never truly removed from the public record and thus is not entitled to privacy protection.

Id.

---

[3]The Nilson court continued, and we agree, that "[w]hile state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they fall far short of the kind of proof necessary to establish a reasonable expectation of privacy." Nilson, 45 F.3d at 372 (quotation omitted).

Just as the judiciary cannot "suppress, edit, or censor events which transpire in proceedings before it," Craig, 331 U.S. at 374, neither does the legislature possess the Orwellian power to permanently erase from the public record those affairs that take place in open court. Actually, we doubt this was the intention of the Arkansas General Assembly, for even in that state an expunged conviction can be used for certain purposes. See Gosnell v. State, 681 S.W.2d 385, 386-87 (Ark. 1984)(deciding that an expunged conviction can be employed to enhance a person's sentence as a habitual offender); cf. Ark. Code Ann. § 16-90-901(b) (Michie Supp. 1996)("'[E]xpunge' shall not mean the physical destruction of any records."). In any event, no governmental body holds the power to nullify the historical fact that in 1987 Eagle pleaded guilty to a felony. Thus, notwithstanding the subsequent expungement order, the officers' divulgence of this public information does not implicate the constitutional right to privacy. See Nilson, 45 F.3d at 372 ("The disclosed information itself must warrant constitutional protection.").

We applaud Arkansas' commendable efforts to rehabilitate first time offenders, many of whom are probably in their youth, and to return those persons to the community without the disgraceful stigma of a criminal record. See Gosnell, 681 S.W.2d at 387 (discussing legislature's intention in passing comparable expungement provision). By the same token, we respect Eagle's endeavors, which appear to have been successful, to put his sordid past behind him and resume his life as a productive citizen. It is unfortunate that the JPD officers, in an ignominious attempt to undermine Eagle's salary survey results, felt it necessary to publicly trample upon another man's reputation. We must constantly remain aware, however, that the Constitution does not provide a remedy for every wrong that occurs in society. Rather, it is a framework for governance that protects those rights that are most cherished among free individuals. At the very least, the Constitution cannot act as a shield to protect Eagle from his own

previous indiscretions.  We therefore reject his attempts to elevate to a constitutional violation the officers' disclosure of his criminal history.

**3.    The unjustified computer searches**

Eagle also complains that the officers violated his constitutional right to privacy by retrieving, without justification, his criminal record from the NCIC and ACIC computer networks.  We find this to be the most troubling aspect of this appeal.  Years ago, at what might now be considered the dawn of the technological revolution, the Supreme Court foresaw on the horizon abuses that might emanate from governmental collection of vast amounts of personal data.  <u>Whalen v. Roe</u>, 429 U.S. 589, 605 (1977).  Some of the Court's remarks in that case bear repeating today:

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files.  The collection of taxes, the distribution of welfare and social security benefits, the supervision of public health, the direction of our Armed Forces, and the enforcement of the criminal laws all require the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed.  The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures. . . . [I]n some circumstances that duty arguably has its roots in the Constitution . . . .

<u>Id</u>. (footnote omitted).  Justice Brennan added:

> [C]ollection and storage of data by the State that is in itself legitimate is not rendered unconstitutional simply because new technology makes the State's operations more efficient.  However, as the example of the Fourth Amendment shows, the Constitution puts limits not only on the type of information the State may gather, but also on the means it may use to gather it.  The central storage and easy accessibility of computerized data vastly increase the potential for abuse of that information, and

13

        I am not prepared to say that future developments will not
    demonstrate the necessity of some curb on such technology.

Id. at 606-07 (Brennan, J., concurring).


        We echo these concerns.  It is disquieting to think that the JPD
employees wasted valuable minutes, time that presumably could have been
expended in the enforcement of criminal laws, to illicitly procure from
computer networks incriminatory information about Eagle.  Still, we must
not forget the type of database accessed in this case.  Eagle has alleged
that the officers used the ACIC and NCIC systems to search his criminal
history files.  Regulations on the use of these computer networks provide
that criminal history information includes "identifiable descriptions and
notations of arrests, detentions, indictments, informations, or other
formal criminal charges, and any disposition arising therefrom, sentencing,
correctional supervision, and release."  28 C.F.R. § 20.3(b) (1995); see
also ACIC System Regulations § 2(D) (1989)(containing nearly identical
definition).  Additionally, the Department of Justice has stated that
criminal history information in the NCIC does not include "[i]ntelligence
or investigative information (e.g., suspected criminal activity,
associates, hangouts, financial information, ownership of property and
vehicles)."  28 C.F.R. § 20.3(b), appendix at 357-58 (1995).


        As we have discussed earlier in this opinion, the type of information
contained within these criminal history files is not the sort of data over
which an individual can successfully assert a right to privacy.  See, e.g.,
Nilson, 45 F.3d at 372 ("Criminal activity is . . . not protected by the
right to privacy.").  Because Eagle has no legitimate expectation of
privacy in the contents of his criminal history file, we cannot agree that
the officers violated his constitutional right when they engaged in an
unwarranted search of this material.  Thus, though it is disturbing that
the officers participated in this sort of activity, Eagle has

not set forth a viable claim for recourse in this case. We hope that, in the future, officers will be discouraged from similar behavior by the time constraints of their jobs and by the possibility of severe criminal penalties.[4] See, e.g., Ark. Code Ann. § 12-12-212 (Michie 1995)(providing that persons who access the ACIC for improper purposes are guilty of a felony).

**B.    Municipal Liability**

Before passing upon the merits of the City's appeal, we must again answer a jurisdictional question. Unlike the individual officers, the City does not enjoy qualified immunity and cannot invoke the collateral order doctrine to justify this appeal from the district court's denial of summary judgment. See Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1207-08 (1995). The Court in Swint unanimously determined that the Eleventh Circuit did not have pendent jurisdiction over a county's interlocutory appeal of a district court's refusal to grant summary judgment. Id. at 1207-12. Nonetheless, although the Court indicated that interlocutory review should be restricted to those types of appeals expressly authorized by Congress, it did not completely foreclose the exercise of pendent appellate jurisdiction. Id. at 1209-12. The Court declined to "definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." Id. at 1212.

We have interpreted Swint to allow pendent appellate jurisdiction "over claims that are 'inextricably intertwined' with interlocutory appeals concerning the defense of qualified

---

[4]We note that our decision on this issue is confined to the facts of this case. As such, we offer no opinion as to whether a mere search of other files, containing information in which a person might have a legitimate expectation of privacy, could in itself violate this constitutional right.

15

immunity." Veneklase, 78 F.3d at 1269. In this case, we have decided that the officers' conduct did not violate Eagle's constitutional right to privacy. This conclusion also disposes of Eagle's related claims against the City. See Thelma D. ex rel. Delores A. v. Board of Educ., 934 F.2d 929, 932 (8th Cir. 1991)(stating that a local governmental entity may be liable for an official custom that "causes an individual to suffer a constitutional harm"); Roach v. City of Fredericktown, 882 F.2d 294, 298 (8th Cir. 1989)(emphasizing that City cannot be liable for failure to train unless there has been "an underlying violation of the plaintiff's constitutional rights by a municipal employee"). Under these circumstances, where our ruling on the merits of the individual employees' assertions has necessarily resolved the City's pendent claim, we decide that the City's appeal is "inextricably intertwined" with the officers' qualified immunity appeal. See Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)(approving the exercise of pendent appellate jurisdiction where the court's ruling on the merits of the collateral qualified immunity appeal resolved all of the remaining issues presented by the pendent appeal). Having thus established our jurisdiction, we reverse the district court's refusal to grant the City's motion for summary judgment on Eagle's invasion of privacy claim.[5]

## C.    Arkansas' Tort of Outrage

The officers also argue that the district court committed error when it refused to grant their motion for summary judgment on Eagle's cause of action under Arkansas' tort of outrage. This state law question is not "inextricably intertwined" with the officers' qualified immunity appeal. See Swint, 115 S. Ct. at

---

[5]As a matter of course, then, we reverse as well the district court's refusal to grant summary judgment to the officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 166 (1985)("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

1212. By like measure, review of this otherwise nonappealable decision is not "necessary to ensure meaningful review" of the appealable order. See id. Therefore, we do not have jurisdiction to consider this aspect of the appeal.

### III. Conclusion

We reverse the district court's refusal to grant summary judgment to the officers and the City on Eagle's claim that they violated his constitutional right to privacy, we dismiss for want of jurisdiction that part of the appeal dealing with pendent state law questions, and we remand for further proceedings consistent with this opinion.

REVERSED IN PART, DISMISSED IN PART, AND REMANDED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

17