HERRERA, District Court Judge,
concurring in part and dissenting in part.[1]
I concur with the majority’s decisions that Plaintiffs have standing to challenge the reporting statute, Majority Op., supra, § II.A, that minors possess informational privacy rights, id. § II.B.l.a, and that the district court abused its discretion with respect to the irreparable injury, balancing of injury, and public interest elements of the preliminary injunction analysis, id. § II.B.2. I dissent from the majority’s decision that Plaintiffs have not demonstrated a likelihood of success on the merits of their claim that the reporting statute violates minors’ privacy rights in information *1122 regarding their voluntary sexual conduct with adolescents of a similar age (“age-mates”). Id. § ILB.l.b.
The district court issued a preliminary injunction against enforcement of the reporting statute to the extent it requires reporting of voluntary sexual activity between agemates.[2] The parties do not dispute the constitutionality of the reporting and disclosure requirements where evidence of force, a power differential, incest, or similar sexually abusive conduct (“actual sexual abuse”) is present. Thus, the issue presented here is not whether the reporting of actual sexual abuse between minors violates minors’ informational privacy rights, but rather whether mandatory reporting of voluntary sexual conduct between adolescent agemates violates their rights.
Significant to this analysis is the fact that SRS “screens out” and does not refer to law enforcement reports concerning “lifestyle” issues that do not directly harm a child. As noted by the majority, SRS does not investigate mutual sexual exploration by agemates where there is no evidence of force, a power differential, or incest. See id. § I.B. Also significant is the fact that reporting is required as to the minor victims of the alleged crimes — not just the perpetrators of the crimes — and that information pertaining to voluntary sexual conduct and confidential medical matters is not public but rather private information to which Kansas would not have access but for the fact that it compels disclosure from minors.
The majority holds that because Kansas has criminalized all sexual activity with adolescents under sixteen years of age, adolescents may not have a constitutional right to informational privacy that would prohibit mandatory reporting or disclosure of information regarding voluntary sexual acts with their agemates. Id. § II.B.l.b (voluntary sexual activity does “ ‘not fall within the realm of privacy’ ” because “ ‘[c]riminal activity is ... not protected by the right to privacy’ ”) (quoting Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir.1995)) and citing Stidham v. Peace Officer Standards & Training, 265 F.3d 1144, 1155 (10th Cir.2001). The majority therefore concludes that Plaintiffs have not demonstrated a “ ‘clear and unequivocal’ ” right to relief on the merits of their claim that mandatory reporting and subsequent disclosure of information concerning minors’ voluntary sexual conduct violates their right to informational privacy, and that the district court abused its discretion in finding otherwise. Id. (quoting Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir.2005)). Because I believe that Plaintiffs have demonstrated by clear proof that they are likely to succeed on the merits of their informational privacy claim, I dissent.[3]
The fact that Kansas criminalizes certain conduct does not, by itself, determine the existence of a federal right to privacy. If federal courts adopted a per se rule providing that an individual has no federal privacy right in information concerning conduct that a state has criminalized, a *1123 state would have the power to eliminate federal privacy rights simply by declaring the conduct to be criminal. Such a result not only inverts the normal primacy of federal law over state law,[4] it also appears to contradict Supreme Court precedent that specifically has upheld federal privacy rights despite a state’s efforts to criminalize the conduct. See Griswold v. Connecticut, 381 U.S. 479, 485-86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (invalidating a state law prohibiting the dispensing or use of birth control devices to or by married couples because the law violated the right to privacy); Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (overruling Bowers v. Hardwick and invalidating a Texas statute making it a crime for two persons of the same sex to engage in consensual intimate relations because the law violated private liberty interests); compare Ferguson v. City of Charleston, 532 U.S. 67, 78, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (acknowledging that patients have a right to privacy in information regarding their positive urine drug test results even though the act of ingesting illegal drugs violated state law, and holding that the reporting of positive urine drug tests to police resulted in unreasonable searches absent patient consent); Skinner v. Ry. Labor Executives’ Ass’n, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (urinalysis test for illegal drugs is a search for Fourth Amendment purposes because it “intrudes upon expectations of privacy that society has long recognized as reasonable”); see also Nat’l Treasury Employees Union v. United States Dep’t of Treasury, 838 F.Supp. 631, 636-37 (D.D.C.1993) (holding that plaintiffs were likely to succeed on claim that employee questionnaire, which included questions about past drug use and prior arrests, solicited information protected by the right to informational privacy).[5]
As this court has recognized, the right to informational privacy is founded “not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.” Mangels v. Pena, 789 F.2d 836, 839 (10th Cir.1986) (citation omitted). “While state statutes and regulations may inform our judgement regarding the scope of constitutional rights,” Nilson, 45 F.3d at 372 (citation omitted), they do not define the right itself, see id. Accordingly, the fact that Kansas has criminalized certain types of voluntary sexual conduct should not lead to a per se conclusion that minors have no privacy rights concerning that conduct and *1124 should not relieve the court from determining, as a question of federal law, whether minors have a legitimate expectation of privacy in information regarding their voluntary sexual conduct and confidential communications with their healthcare providers.
In answering this question under federal law, I conclude that minors have a legitimate expectation of privacy in their intimate sexual and confidential medical information. This court has extended the right to privacy to protect against intrusion into personal sexual matters. In Eastwood v. Department of Corrections, the court specifically held that the “constitutionally protected right [to privacy] is implicated when an individual is forced to disclose information regarding personal sexual matters.” 846 F.2d 627, 631 (10th Cir.1988); see also Livsey v. Salt Lake County, 275 F.3d 952, 956 (10th Cir.2001) (recognizing that a legitimate expectation of privacy may exist in “information pertaining ... to highly personal sexual behavior”); Nilson, 45 F.3d at 372 (“[expectations of privacy are legitimate if the information which the state possesses is highly personal or intimate”). “Supreme Court decisions [also] ‘make it clear that the right [to privacy] has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education.’ ” Douglas v. Dobbs, 419 F.3d 1097, 1101-02 (10th Cir.2005) (citations omitted), cert. denied, ■ — ■ U.S.-, 126 S.Ct. 1147, 163 L.Ed.2d 1001 (2006). This protection extends to intimate choices by unmarried as well as married persons. See, e.g., Carey v. Population Servs. Int’l, 431 U.S. 678, 686, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). The Supreme Court also recognized in Lawrence v. Texas that “sexual behavior” is “the most private human conduct,” and that the personal nature of that conduct “counsels] against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person.” 539 U.S. at 567, 123 S.Ct. 2472. Additionally, in A.L.A. v. West Valley City, this Court expressly held that the right to privacy encompasses information provided in the course of seeking healthcare. A.L.A, 26 F.3d 989, 990 (10th Cir.1994) (“[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection”) (citations omitted); see also Lankford v. City of Hobart, 27 F.3d 477, 479 (10th Cir.1994) (there is “ ‘no question that an employee’s medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection’ ”) (citations omitted).
■ The information subject to disclosure under the reporting statute concerns highly personal and intimate voluntary sexual and confidential medical matters entitled to protection by the right of privacy. The fact that Kansas has criminalized voluntary sexual conduct between adolescent agemates does not put adolescents “on notice” that they should have no expectation of privacy in information concerning that conduct because voluntary sexual relationships between age-mates, and relationships between patients and their healthcare providers, are traditionally private relationships that fall within the constitutionally protected zone of intimate relationships.[6] Accordingly, *1125 under A.L.A., EasUvood, and Supreme Court precedent granting a right to privacy in highly personal and intimate matters such as voluntary sexual relationships, I conclude that minors have a legitimate expectation of privacy in their voluntary sexual and confidential medical information.
The fact that Kansas criminalizes voluntary sexual conduct does not deprive minors of their pre-existing right to privacy in their voluntary sexual or confidential medical information. That Kansas criminalizes such conduct may inform the court’s judgment regarding the scope of federal constitutional rights, but cannot alone extinguish a federal privacy right. See, e.g., Nilson, 45 F.3d at 372. Although in Nilson and Stidham illegality under state law weighed heavily in favor of finding that the plaintiffs did not possess a legitimate expectation of privacy in their own illegal activity, the facts of the instant case are distinguishable from Nilson and Stidham and analogous to EasUvood, A.L.A., and the aforementioned Supreme Court cases.
First, Nilson and Stidham involve rights of privacy in information regarding the plaintiffs’ own criminal conduct. In contrast, the reporting statute at issue here requires an infringement of the privacy rights of victims, and not just perpetrators, of criminal conduct. Under Kansas law, a minor under sixteen years of age who engages in sexual activity only breaks the law if he or she engages in the activity with another adolescent under sixteen. Those minors under sixteen, whose partners are sixteen years of age or older, have not engaged in illegal conduct, and therefore fall outside the ambit of the argument that the illegality of conduct voids constitutional protections for information about that conduct. Indeed, these minors with partners sixteen or older are victims of sexual assault under Kansas law. The majority’s holding today infringes the privacy rights of these victims, even though victims of sexual crimes have a heightened, and not diminished, right of privacy. See, e.g., Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (noting that a victim’s right to privacy in information regarding her sexual assault may outweigh even a defendant’s constitutional right to confrontation); Bloch v. Ribar, 156 F.3d 673, 685-86 (6th Cir.1998) (holding that a victim of sexual assault has a right to keep information about the details of the assault private) (relying in part upon this court’s decisions in Eastwood and Mangels).
Second, Nilson and Stidham involve information that was already in the public sphere and legitimately in the state’s possession. In Nilson, the information disclosed was an expunged criminal record. This information was part of the state’s public record, which therefore negated the legitimacy of the plaintiffs expectation of privacy.[7] Similarly, in Stidham, the allegations of rape and assault against Mr. Stidham disseminated by a state agency empowered to regulate the certification of peace officers likewise were already in the public sphere and legitimately in the state’s possession. Here, however, the in *1126 formation to be disclosed is not otherwise in the public record or legitimately in the state’s possession. Instead, it is contained solely in minors’ confidential conversations with their healthcare providers — conversations that are shrouded in multiple state and federal protections based upon the relationship between healthcare professionals and their patients. See, e.g., A.L.A., 26 F.3d at 990; see also supra note 6 and accompanying text. The fact that the information regarding minors’ voluntary sexual acts is not public, but rather intensely private information to which Kansas would not have access but for the fact that it compels disclosure of the information, renders minors’ expectations of privacy far greater than the expectation of privacy possessed by Mr. Nilson or Mr. Stidham. Compare Ferguson v. City of Charleston, 532 U.S. 67, 78,121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (noting that “the reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with non-medical personnel without her consent,” and holding that, after weighing the individual’s interest in privacy against the state’s interest in detecting and preventing illegal drug use, the production of the results of such tests constitutes an illegal search in violation of the Fourth Amendment).
Third, in Nilson and Stidham the information disclosed was obtained by the state through the normal course of the state’s operations. Here, Kansas obtains the information not through the normal course of its operations, but rather by compelling the incriminating information from the minors themselves through the mandatory reporting of their confidential communications with their physicians, psychologists, and therapists. A right to privacy is far greater in information that is compelled from an individual whose right the state seeks to infringe than in information that is discovered by the state during the normal course of its business.
This court already held in Eastwood and A.L.A. that the right to privacy protects against intrusion into personal sexual and medical matters. Eastwood, 846 F.2d at 631; A.L.A., 26 F.3d at 990. Moreover, the facts of Nilson and Stidham are not sufficiently analogous to those of this case to deprive minors of their privacy rights under these eases. I therefore conclude that, even though Kansas has criminalized voluntary sexual activity between age-mates, minors have a legitimate expectation of privacy in their voluntary sexual and confidential medical information.
The fact that no Tenth Circuit or Supreme Court case has, as yet, distinguished Nilson or Stidham does not alter this analysis. Courts daily engage in the task of distinguishing and analogizing cases- to determine applicable law and regularly grant preliminary injunctions even when no binding case law is directly on point. Moreover, here, the reliance upon Nilson and Stidham to per se eliminate minors’ federal privacy rights is inconsistent with Supreme Court and Tenth Circuit precedent providing that federal, and not state, law determines the existence of a federal constitutional. right. See, e.g., McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 425, 4 L.Ed. 579 (1819); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir.1986); Nilson, 45 F.3d at 372. Because of the primacy of federal law over state law, and because the facts of Nilson and Stidham are significantly distinguishable from the facts of this case, Plaintiffs have clearly and unequivocally demonstrated that minors possess a legitimate expectation of privacy.
Once a court determines that a privacy right exists, the court next must determine whether “disclosure serves a compelling state interest” and whether “disclosure can be made in the least intrusive manner.” *? Denver Policemen’s Protective Ass’n v. Lichtenstein, 660 F.2d 432, 435 (10th Cir.1981) (citation omitted). The majority-notes that where the privacy rights at issue are those of minors, the question is whether the reporting statute “serve[s] ‘any significant state interest ... that is not present in the case of an adult.’ ” Majority Op., supra, § II.B.l.b (quoting Carey v. Population Servs. Int’l, 431 U.S. 678, 693, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)) (plurality opinion) (additional citations omitted). Plaintiffs maintain that this diminished standard is “incorrect” because the Supreme Court has applied it only “to the decisional privacy rights of minors, not to the informational privacy rights of minors.” Appellees Br. 30 n. 24 (citing Carey, 431 U.S. at 693 n. 15, 97 S.Ct. 2010). Regardless of whether the court applies the “compelling” or “significant” state interest test, under the facts of this case, I believe that Kansas’s asserted interest in mandatory reporting and disclosure of voluntary sexual conduct is particularly weak and does not meet either test.
The majority, citing various cases, notes that Kansas generally has an interest in enforcement of its criminal laws, an interest parens patriae in protecting the best interests of minors, and an interest in promoting the public health of minors. Majority Op., supra, § II.B.l.b. Admittedly, in certain instances a government may have such interests. In this case, however, unlike the cases cited by the majority, the interests are neither , compelling nor significant because Kansas takes no steps to enforce, protect, or serve the interests in the context of the voluntary sexual conduct of adolescent agemates. Compare Lawrence v. Texas, 539 U.S. 558, 570-73, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (noting that states historically and presently have failed to enforce laws criminalizing certain voluntary sexual conduct and finding no legitimate state interest in criminalizing that conduct); Eastwood, 846 F.2d at 630 (finding a violation of the right to privacy where the intrusion into the plaintiffs private sexual matters had “little correlation” with the defendants’ purported interest). As the majority recognizes, once any information regarding voluntary sexual conduct between adolescents of a similar age is reported to SRS, SRS “screens out,” or does not investigate, this conduct. See Majority Op., supra, § I.B. That Kansas does no more than pay lip service to its asserted interests belies the very existence of those interests in the specific context of voluntary sexual activity between agemates. In contrast, in the cases cited by the majority, the states did not simply assert their interests in the abstract, but rather took specific governmental action to enforce, protect, and serve those interests.[8] Accordingly, the *1128 evidence clearly and unequivocally establishes that Kansas has no compelling or significant interest at work here.
By contrast, a minor’s interest in maintaining privacy concerning his or her voluntary sexual conduct is particularly strong. “ ‘The right to be left alone,’ the Supreme Court has said, is ‘the right most valued by civilized men.’ ” Eastwood, 846 F.2d at 631 (quoting Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandéis, J., dissenting)). Furthermore, information concerning a minor’s voluntary sexual conduct is highly private and intimate, see id. (extending the right to privacy to protect against forced disclosure of information regarding personal sexual matters), and indeed at the core of the “personal identity which, under prevailing precedent, is entitled to constitutional protection,” Mangels, 789 F.2d at 839 (citation omitted). In addition, a minor has a strong interest in maintaining a confidential relationship with his or her healthcare provider and not having the threat of disclosure of confidential information impede that relationship or serve as a deterrent to obtaining healthcare in the first place. Cf. A.L.A., 26 F.3d at 990 (confirming that confidential medical information is entitled to privacy protection). Moreover, the privacy interest is even greater when it is viewed from the perspective of minors who are victims, and not perpetrators, of the criminalized conduct, because victims of criminal activity have a heightened expectation of privacy. See, e.g., Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); Bloch v. Ribar, 156 F.3d 673, 685-86 (6th Cir.1998). Finally, a minor’s interest is particularly compelling under the facts of this case because automatic reporting intrudes upon his or her privacy right at the intersection of two traditionally private relationships, voluntary sexual relationships and physician-patient relationships, where individuals enjoy a clear expectation of privacy.
Because Kansas has not established a substantial or compelling government interest in obtaining or disclosing information related to minors’ voluntary sexual activities with agemates sufficient to outweigh minors’ legitimate expectation of privacy in information concerning that conduct, I conclude that Plaintiffs have demonstrated by clear and unequivocal proof that they are likely to succeed on the merits.[9] Accordingly, I dissent.

. The majority opinion and dissent initially were filed on January 27, 2006, as a nonbinding order and judgment. Aid for Women v. Foulston, No. 04-3310, 441 F.3d 1101, 2006 WL 723354, 2006 U.S.App. LEXIS 2366 (10th Cir. Jan. 27, 2006). As a result of time constraints arising from the impending January 30, 2006, trial in the district court, the dissent was filed without revisions to address certain aspects of the majority opinion. Because those time constraints no longer are applicable, the dissent has been revised in accordance with the majority opinion and therefore differs from the dissent to the order and judgment.

. Voluntary sexual activity includes more than sexual intercourse. It also includes, among other things, "fondling or touching.” See, e.g., Kan. Stat. Ann. § 21-3522.

. To satisfy their burden of proof and obtain a preliminary injunction, Plaintiffs need only show "by clear proof” that they "probably [will] prevail when the merits are tried.” Penn v. San Juan Hosp., 528 F.2d 1181, 1185 (10th Cir.1975). The requirement that a mov-ant demonstrate that it has met its burden by "clear and unequivocal” proof, Schrier, 427 F.3d at 1258, does not alter the preliminary injunction requirement that a movant need only demonstrate a "substantial likelihood of success on the merits,” Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1154 (10th Cir.2001), and not "clear and unequivocal” success on the merits.

. See, e.g., McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 425, 4 L.Ed. 579 (1819) ("This great principle is, that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and the laws of the respective states, and cannot be controlled by them.").

. The fact that Plaintiffs do not challenge the constitutionality of the Kansas statute criminalizing voluntary sexual conduct of minor agemates does not render untenable their claim that mandatory reporting and disclosure of information regarding their voluntary sexual acts violates their rights to informational privacy. Compare Majority Op., supra, § II.B.l.b at n. 18. The Supreme Court has never grafted such a requirement onto its privacy jurisprudence. Moreover, constitutional jurisprudence carefully distinguishes between the power to prohibit conduct, which has been given deference, and the power to compel disclosure of information about the conduct, which has been severely circumscribed by the Constitution. For example, in the case of tangible evidence of a crime, the government typically must meet the Fourth Amendment's warrant and reasonableness requirements. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); see also Appellee's Br. 18-19. In the case of information disclosed to an attorney, the state is generally prohibited from having access to the information even if the information concerns illegal activity. Coplon v. United States, 191 F.2d 749, 759 (D.C.Cir.195'1); see also Appellees Br. 19.

. A minor’s expectation of privacy in his or her relationship with a healthcare provider is particularly compelling given the multiple state and federal protections for the confidentiality of the relationship. To whatever extent a statute gives notice of a lack of privacy regarding the conduct it criminalizes, it does not do so with respect to information about such conduct disclosed to healthcare providers. Thus, for example, an individual has no legitimate expectation that information about illegal drug use gathered in a police investigation would remain private, see. Mangels, 789 F.2d at 839, but a person consulting with a *1125 physician in an effort to seek treatment for drug addiction has a legitimate expectation of privacy as to that information. Appellees Br. 22-23.

. See Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (rejecting claim that plaintiff had a right to privacy in “an official act such as an arrest” because the state was not attempting td “restrict his freedom of action in a sphere contended to be 'private' "); see also Trade Waste Mgmt. Ass’n v. Hughey, 780 F.2d 221, 234 (3d Cir.1985) (rejecting plaintiff's claim of a privacy right in records of a criminal conviction and pending criminal charges because such “matters are by definition public”), cited in Majority Op., supra, § II.B.l.b.

. See, e.g., Grand Jury Proceedings of John Doe v. United States, 842 F.2d 244, 248 (10th Cir.1988) ("government's interest in investigating crimes and enforcing the criminal laws” protected and served by requiring minor to testify before grand jury where government presumably sought to obtain indictment against accused and subsequently conduct criminal prosecution of accused); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Bd.2d 543 (1971) (government’s "very vital interest in enforcement of criminal laws” protected and served by requiring defendants to stand trial for their crimes where defendants presumably faced subsequent punishment if found guilty); Davis v. Reynolds, 890 F.2d 1105, 1110 (10th Cir.1989) (government's interest in " 'safeguarding the physical and psychological well-being of a minor’ ” served by closing a courtroom during the testimony of a minor victim of a crime where closing of courtroom would protect the minor from public scrutiny) (quotation omitted); Palmore v. Sidoti, 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (government's "highest” interest in "protect[ing] the interests of minor children” served by allowing courts to make custody determinations in the best interests of a child where such determinations presumably are taken into consider *1128 ation when awarding custody); Pesca v. J. Sterling Morton High Sch., 830 F.2d 789, 797-98 (7th Cir.1987) (state's "compelling interest in protecting abused children” served by requiring mandatory reporting of child abuse where there was no evidence in the record indicating a failure to investigate reported abuse); Clark v. City of Draper, 168 F.3d 1185, 1187, 1189 (10th Cir.1999) ("government's strong interest in public health” protected and served by requiring immediate testing for rabies of wild animals that bite persons where such testing was in fact performed); Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 498 (10th Cir.1998) (compelling government interest in public health protected and served by the consideration of residency as a "plus” factor in admissions because residents presumably are more likely to remain in New Mexico and therefore assist in ensuring the health of New Mexicans); Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir.1998) (government's "interest in the health and welfare of its children” served by allowing for emergency removal of children from their homes where there was no evidence in the record that the state failed to investigate the suspected abuse).

. Kansas argues that if minors have informational privacy rights in sexual conduct, all states' age of consent laws are unconstitutional. This argument does not have merit. If a state can demonstrate that disclosure serves a compelling or significant state interest that is properly tailored to the interest, the fact that minors have a right to informational privacy *1129 will not render the reporting laws unconstitutional. Here, the parties do not dispute, and the dissent does not challenge, the fact that the state has a compelling state interest in mandatory reporting of actual sexual abuse (¿.e., sexual activity with evidence of force, a power differential, or incest) or the fact that reporting laws are constitutional to the extent they require reporting of such actual abuse.