**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 24 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIKE STEVEN STIDHAM,

    Plaintiff - Appellant,

v.

PEACE OFFICER STANDARDS
AND TRAINING; UTAH STATE
DEPARTMENT OF PUBLIC
SAFETY; STATE OF UTAH;
SIDNEY P. GROLL; and JOHN DOES
1-3,

    Defendants - Appellees.

No. 00-4036

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 99-CV-624-B)**

---

Stephen W. Cook, Salt Lake City, Utah, for Plaintiff-Appellant.

Nancy L. Kemp, Assistant Attorney General (Jan Graham, Utah Attorney General, with her on the brief), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **KELLY** and **McKAY**, Circuit Judges, and **BRIMMER**,[*] District Judge.

---

**McKAY**, Circuit Judge.

---

[*]Honorable Clarence A. Brimmer Jr., United States District Judge for the District of Wyoming, sitting by designation.

Appellant Mike Steven Stidham brought state and federal claims in the Third Judicial District of Utah against the State's Peace Officer Standards and Training Division (POST) and various individual defendants. After Defendants removed the case to federal court, the district court dismissed the action under Federal Rule of Civil Procedure 12(b)(6), and this timely appeal followed. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Background

Appellant is a certified peace officer in the state of Utah. To become certified, Appellant completed a training and examination procedure established by POST, the state agency empowered to regulate the certification of peace officers employed in Utah.[1] Appellant was subsequently hired by the Salt Lake County Sheriff's Office then later joined the Tooele County Sheriff's Office.

In July 1998, Tooele County issued a policy requiring its peace officers to reside within county limits. Appellant was not a Tooele County resident and did not want to change his residence, so he sought employment elsewhere. He applied for one of seventeen open positions in the City of South Salt Lake; however, despite being ranked third in the testing and interview process, the city

---

[1]Similar state agencies have been created in forty-two other states. See Roger L. Goldman & Steven Puro, Revocation of Police Officer Certification: A Viable Remedy for Police Misconduct?, 45 St. Louis U. L.J. 541, 542 n.6 (2001).

refused to hire him. Appellant was advised that the basis for his rejection was certain information provided by POST alleging that Appellant had raped a young girl, assaulted a Tooele County resident, resigned from his position with the Salt Lake County Sheriff's Office under threat of termination, and was "at risk" as a peace officer. Appellant declared this information to be false and attempted unsuccessfully to acquire POST's record of the allegations. He also applied for positions at other law enforcement agencies; however, despite being ranked highly among a number of candidates, he was repeatedly rejected due to the information provided by POST. At no time did POST initiate proceedings to suspend or revoke Appellant's certificate. In addition, POST neither conducted hearings nor provided Appellant with notice regarding the allegations against him.

Appellant brought suit against POST, its director, and other individuals employed by POST (identified only as John Does 1-3). Appellant's first cause of action alleged that Defendants violated Utah's Government Records Access and Management Act, Utah Code Ann. § 63-2-101 to 909, based on their refusal to provide Appellant with copies of POST's records concerning him. Appellant's second cause of action alleged that Defendants violated 42 U.S.C. § 1983 by failing to provide him both substantive and procedural due process while effectively revoking his certificate as a peace officer and foreclosing his employment opportunities. Appellant also alleged that Defendants invaded his

-3-

constitutional right to privacy. The district court dismissed Appellant's federal claims under Federal Rule of Civil Procedure 12(b)(6) and remanded his state claim to Utah's Third District Court. Only the federal claims are at issue on appeal.

We review de novo the district court's grant of a 12(b)(6) motion to dismiss, bearing in mind that "all well-pleaded allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). In addition, a "12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quotation and citation omitted).

## II. Due Process Claims

### A. Property Interest: Peace Officer Certification

Appellant first contends that the district court erred in holding that he failed to allege that the State deprived him of a constitutional property right without procedural due process. Appellant argues that he had a constitutionally-protected property right in his certification as a peace officer, which POST effectively revoked without notice or hearing.

Procedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest. See Setliff v. Mem'l Hosp.,

850 F.2d 1384, 1394 (10th Cir. 1988) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)). The Supreme Court has held that a license to practice one's calling or profession is a protected property right. See Bell v. Burson, 402 U.S. 535, 539 (1971). In Bell, the Court held that a traveling minister's license to drive automobiles could not be suspended without procedural due process. The Court declared:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without the procedural due process required by the Fourteenth Amendment.

Id. at 539. Expanding upon Bell, Justice Brennan subsequently declared that "[w]hat was said of automobile drivers' licenses in Bell v. Burson . . . is even more true of occupational licenses." Barry v. Barchi, 443 U.S. 55, 69-70 (1979) (Brennan, J., concurring). This court has previously suggested that in some circumstances Forest Service permits, once issued, may warrant such constitutional protection, see Fed. Lands Legal Consortium ex rel. E.A. Robart Estate v. United States, 195 F.3d 1190, 1200 (10th Cir. 1999), as well as licenses to sell beer, see Tanasse v. City of St. George, No. 97-4144, 1999 WL 74020, at *2 (10th Cir. Feb. 17, 1999).

Thus, the revocation or removal of a license or certificate that is "essential in the pursuit of a livelihood" requires procedural due process under the

Fourteenth Amendment. Bell, 402 U.S. at 539. Because Appellant's certification is both required and enables him to work as a peace officer in the State of Utah, we agree that Appellant retains a protected property right in his peace officer certificate.

Defendants do not dispute Appellant's right to due process for the deprivation of his certification. Instead, Defendants argue that Appellant has not been deprived of his certificate because the certificate has not been revoked or suspended, nor have revocation or suspension proceedings been initiated against him, and thus no right to due process has arisen. Appellant, on the other hand, asserts that Defendants "effectively" revoked Appellant's certificate by disseminating the aforementioned allegations against him to his potential employers, thus removing all validity and benefit that the certificate may have had.

The resolution of this dispute is aided by an examination of POST's statutory authority for collecting and disseminating information. Under the Peace Officer Training and Certification Act, Utah Code Ann. §§ 53-6-101 to 310, POST is managed by a director, who is empowered to "prescribe minimum qualifications for certification of peace officers[,] . . . prescribe standards for revocation of certification for cause . . . [and] provide for issuance of appropriate certificates." Id. § 53-6-105(1)(b), (d). The director is thus authorized to certify

peace officers and give evidence of their certification. Examining the remainder of the Act, the director is only authorized to receive and disseminate information regarding peace officers under two types of circumstances, both of which involve the suspension or revocation of the officers' certificates. First, § 209 requires agencies employing officers to submit a change of status form to POST when an officer's employment terminates, indicating, inter alia , whether the officer "has resigned, retired, terminated, transferred, deceased, or that the peace officer's name has changed." Id. § 53-6-209. Second, under § 211:

> (1)   (a) The director may, upon the concurrence of the majority of the council, revoke, refuse, or suspend certification of a peace officer for cause.
>
> (b) Except as provided under Subsection 6 [suspension for felonies committed], the council shall give the person or peace officer involved prior notice and an opportunity for a full hearing before the council.
>
> . . . .
>
> (3) The director shall send notice to the governing body of the political subdivision employing the peace officer and shall receive information or comments concerning the peace officer from the governing body or the agency employing the officer before suspending or revoking that peace officer's certification.
>
> . . . .
>
> (7) The chief, sheriff, or administrative officer of a law enforcement agency is required to report to Peace Officer Standards and Training all conduct of employees who are peace officers, as provided in Subsection (1)(d) above [listing causes of action for revocation or suspension of certification].

-7-

Id. § 53-6-211.

This presents a sensible system. POST has been set up as the state licensing agency for peace officers, established to provide standards, training, certification, and decertification of such officers. If a peace officer has acted improperly, the officer's employer reports such conduct to POST's council. If the officer's actions warrant further action, the council gives notice and a hearing to the officer, comporting with due process, and then votes as to whether the officer's certification should be changed. If the council votes in favor of suspending or revoking the officer's certification, it informs the director. Next, the director notifies the governing body employing the officer of the potential suspension or revocation and receives additional information or comments. The director then determines whether suspension or revocation is warranted.

It is also important for us to note what the Act does not direct. The director is not empowered to notify the body employing the officer unless the council has voted to revoke or suspend the officer's license following "prior notice and an opportunity for a full hearing before the council." Id. § 53-6-211(1)(b). More pertinent to our inquiry, nowhere is the director or the council authorized to report information about an officer to potential employers outside of POST's normal role of evidencing her certification status. Finally, neither the director nor the council is authorized to conduct independent investigations of officer conduct

unless the officer's employers have given the council information worthy of initiating suspension or revocation procedures, which in turn invoke due process for the officer.

Accepting Appellant's well-pleaded allegations as true, as we must, Defendants have clearly acted ultra vires in this case. They have disseminated unproven and highly damaging allegations against Appellant, not simply Appellant's status. They have reported these allegations, for which Appellant may potentially lose his certification, to Appellant's potential employers. Finally, Defendants have committed these acts without (1) giving Appellant prior notice and hearing, (2) a determination and vote by the council, and (3) an investigation and decision of the director.

Although Defendants exceeded their authority under state law and ignored statutory requirements for due process, we must still decide whether they violated federal law—that is, whether Defendants deprived Appellant of his property interest in his certification. Appellant's certification has never actually been revoked; however, Appellant claims that, as a result of Defendants' acts, he cannot now obtain work as a peace officer using that certification. Hence, we must still determine whether an "effective revocation" of Appellant's certification is possible and, if so, whether such occurred in the instant action.

This court has sanctioned effective revocations in other circumstances. In

Kenan v. Woods (In re Woods), 173 F.3d 770 (10th Cir. 1999), we held that when a bankruptcy court reopened a Chapter 11 case, "vacatur of [its prior] closing order effectively revoked [a] prior abandonment" of property that occurred when the case was closed. Id. at 781. In Figuly v. City of Douglas, 76 F.3d 1137 (10th Cir. 1996), we held that a city employee was not deprived of due process when a personnel manual applicable to his contract "was effectively revoked when the city council resolved to void 'all employment contracts' that [the employee] had with the city." Id. at 1142. These cases illustrate the sanctioned use of "effective revocation" in some circumstances. However, we are not aware of any previous cases in this court discussing the effective revocation of a certificate or license. For guidance, we turn to our sister circuits.

The Seventh Circuit's holding in Reed v. Vill. of Shorewood, 704 F.2d 943 (7th Cir. 1983), is instructive. In Reed, the owners of a liquor license were harassed by village police and subject to numerous groundless proceedings in an attempt by village officials to take away the liquor license. Although these attempts failed, the continued harassment eventually caused the owners to close their business and surrender their license. In a suit against the village under § 1983, the district court dismissed the complaint because the village had not actually taken the owners' license. The Seventh Circuit reversed. It held:

> The defendants never succeeded in taking away the plaintiffs' license either by revocation or nonrenewal . . . . But "deprive" in the due

-10-

process clause cannot just mean "destroy." If the state prevents you from entering your house it deprives you of your property right even if the fee simple remains securely yours. A property right is not bare title, but the right of exclusive use and enjoyment. [Here] the plaintiffs were deprived of their property right in the license even though the license was never actually revoked.

The principle is familiar from the related area of takings of property that are subject to the just compensation clause of the Fifth Amendment. If government makes your house uninhabitable, that is a taking of your property even if you retain a clear title. The principle applies equally to deprivations as distinct from takings (permissible if compensated) of property and must, or state officials could with impunity destroy property rights in detail.

Id. at 949 (citations omitted and emphasis added).

Similarly, the Eighth Circuit held that city officials who had forbidden builders from completing a shopping mall on land that had been zoned for the mall's construction deprived the builders of a property interest, even though the city never officially revoked the applicable zoning classification. See Westborough Mall, Inc. v. City of Cape Girardeau, 794 F.2d 330 (8th Cir. 1986). That court held:

[T]he deprivation of a constitutional right does not depend on form. We must look at the substance of the actions taken relative to a constitutionally protected right. The essence of a right may be destroyed although the plaintiff's right is still recognized in an ordinance or in a legal title.

Id. at 336.

We are persuaded by the reasoning of the Seventh and Eighth Circuits. In the instant action, Defendants have disseminated false and fatally damaging

-11-

allegations against Appellant to his potential employers. Defendants have done this in lieu of statutory procedures, in excess of their statutory authority, and in contravention of statutorily-mandated procedural due process. More importantly, the consequence of Defendants' actions is that Appellant cannot use his certificate to obtain employment. Absent relief by this court, Defendants could continue to prevent Appellant from acquiring employment. A state agency cannot escape liability for depriving an individual of a legitimate property interest merely by arguing that it has not revoked or destroyed the actual legal title to that interest. Actions taken by the State which destroy the value or utility of a protected property interest constitute a Fourteenth Amendment deprivation of that interest for which due process cannot be denied. Accepting as true Appellant's well-pleaded allegations, it was error for the district court to dismiss Appellant's action for failing to state a claim for the deprivation of a protected property interest.

**B. Liberty Interests: Employment Opportunities and Reputation**

Appellant also asserts that he has stated a claim that Defendants deprived him of two related liberty interests. The first—his right to enjoy employment opportunities in his chosen field—has been repeatedly upheld in the courts. In Schware v. Board of Bar Examiners, 353 U.S. 232, 238-39 (1957), the Supreme Court held: "A State cannot exclude a person from the practice of [any]

occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." This court has similarly held: "The liberty interest that due process protects includes the individual's freedom to earn a living." Lentsch v. Marshall, 741 F.2d 301, 303 (10th Cir. 1984).

Appellant's second asserted liberty interest—his good name, reputation, honor, and integrity—is more problematic. While this court has recognized that an individual's reputation is a protected liberty interest, it has also required plaintiffs to show that their reputation was damaged "in connection with [an] adverse action taken against them." Flanagan v. Munger, 890 F.2d 1557, 1571 (10th Cir. 1989). In other words, "defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest." Renaud v. Wyoming Dep't of Family Servs., 203 F.3d 723, 726-27 (10th Cir. 2000).

In Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994), we integrated the two interests asserted by Appellant into a four-part test for whether statements infringe upon "a liberty interest in [one's] good name and reputation as it affects [one's] property interest in continued employment." Id. at 480.

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

Id. at 481 (citations omitted) (emphasis added). The "foreclosure of employment

-13-

opportunities" aspect of the <u>Workman</u> test, upon which Appellant principally relies for his liberty interest claim, was based in large part upon the Supreme Court's decision in <u>Paul v. Davis</u>, 424 U.S. 693 (1976). In <u>Paul</u>, the Court determined that an individual is deprived of a protected liberty interest "'where government action has operated to bestow a badge of disloyalty or infamy, *with an attendant foreclosure from other employment opportunity*.'" <u>Paul</u>, 424 U.S. at 705 (quoting <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 898 (1961)) (emphasis supplied by <u>Paul</u> Court). Similarly, in <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972), the Court held that a liberty interest would be deprived where "the State . . . imposed on [the plaintiff] a stigma or other disability that *foreclosed his freedom to take advantage of other employment opportunities*." <u>Id.</u> at 573 (emphasis added).

However, subsequent to its decisions in <u>Paul</u>, <u>Cafeteria Workers</u>, and <u>Roth</u>, the Court issued its decision in <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991). Siegert, a clinical psychologist, resigned under threat of termination from a hospital operated by the Federal Government in Washington, D.C. Siegert then attempted to gain employment at United States Army hospitals in Germany, which required that his former employer provide information on Siegert's job performance. Siegert's former supervisor responded by letter that Siegert was "inept and unethical, perhaps the least trustworthy individual I have supervised." <u>Id.</u> at 228

(citation omitted). "After receiving this letter, the Army Credentials Committee told Siegert that since reports about him were extremely unfavorable . . . the committee was recommending that [Siegert] not be credentialed." Id. (citation omitted). Soon after exhausting his administrative appeals, the Court noted, Siegert's "federal service employment [was] terminated." Id. at 229. Thus, the alleged defamation written by Siegert's former federal employer effectively prevented Siegert from gaining new employment in his field in United States Army hospitals and perhaps other federal institutions.

The Supreme Court held that Siegert did not state a claim for the violation of a protected liberty interest. See id. at 233-34. The Court reasoned that Siegert had not been terminated incident to the alleged defamation and that damage flowing from an injury to one's reputation "may be recoverable under state tort law but it is not recoverable in a [federal] action." Id. at 234. Inexplicably, and despite a vociferous dissent, the five-member majority in Siegert made no reference to the constitutional deprivation of liberty caused by the foreclosure of employment opportunities, which the Court had previously approved in Paul, Cafeteria Workers, and Roth. The Court in Siegert did not expressly overrule its prior precedents; however, despite its lack of explanation, the Court's holding in Siegert compels us to conclude that even though this action would have survived under Paul and its progeny, it has foreclosed relief under the Liberty Interest

-15-

Clause of the Constitution on the facts alleged in this case.

Like Siegert, Appellant was not terminated incident to an alleged defamation; Appellant resigned, then sought government employment elsewhere. Like Siegert, Appellant was unable to obtain the type of government employment he sought, allegedly due to the defamatory statements. On facts so close that they cannot be distinguished on a principled basis, the Supreme Court has foreclosed finding that this set of facts deprive one of a protected liberty interest. Thus, we hold that Appellant has not adequately alleged a claim for the violation of a constitutionally-protected liberty interest.

### III. Privacy

Appellant last alleges that Defendants' dissemination of the allegations against him violated his constitutional right to privacy.

The Fourteenth Amendment's Due Process Clause protects individuals from state intrusion into fundamental aspects of their personal privacy. See Paul v. Davis, 424 U.S. 693, 713 (1976). One such sphere of constitutionally-protected privacy is "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). In ascertaining whether a certain type of information is given such protection, the court "must consider, (1) if the party asserting the right has a legitimate expectation of privacy [in that information], (2) if disclosure serves a compelling state interest, and (3) if disclosure can be

made in the least intrusive manner." Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981). However, in evaluating information under this test, "we need not address the second and third factors if the first is not met." Falvo v. Owasso Indep. Sch. Dist. No. I-011, 233 F.3d 1203, 1209 (10th Cir. 2000). Therefore, we will first determine whether Appellant had a legitimate expectation of privacy in the allegations against him. Notably, this determination does not hinge on Defendants' failure to provide Appellant due process or even the damage incurred to Appellant's employment or reputation. "Mere allegations that an official failed to abide by state law will not suffice to state a constitutional [privacy] claim. The disclosed information itself must warrant constitutional protection." Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995). For such information to warrant protection, it must be "highly personal or intimate." Id.

In the instant action, Defendants alleged that Appellant resigned from his position with the Salt Lake County Sheriff's Office under threat of termination and was "at risk" as an employee. Neither of these allegations contain information that requires constitutional protection. We do not consider reasons for resignation or employee evaluations to be "highly personal or intimate." In this connection, we have "held that police internal investigation files were not protected by the right to privacy when the 'documents related simply to the

-17-

officers' work as police officers.'" Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir. 1989) (quoting Lichtenstein, 660 F.2d at 435). These allegations castigate Appellant's on-the-job performance, foreclose his employment opportunities, and may invoke tort liability for defamation, but Appellant does not have a constitutionally-protected expectation of privacy in them.

Next, allegations that Appellant raped a young woman and assaulted a Tooele resident are also not so protected. Certainly, such information is sensitive in nature and considerably stigmatizes Appellant. However, as we have previously noted, "a validly enacted law places citizens on notice that violations thereof do not fall into the realm of privacy," and "[c]riminal activity is thus not protected by the right to privacy." Nilson, 45 F.3d at 372 (citing Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986). It is irrelevant to a constitutional privacy analysis whether these allegations are true or false; "[t]he disclosed information itself must warrant constitutional protection." Nilson, 45 F.3d at 372. Because Appellant has not demonstrated a legitimate expectation of privacy in the allegations made by Defendants, he does not state a claim for the violation of his constitutional right to privacy.[2] We thus affirm the holding of the district court in this regard.

_____

[2]Appellant's failure to state a claim that he had a legitimate expectation of privacy in the disclosed information permits us to forgo analysis of the remaining two factors. See Falvo, 233 F.3d at 1209.

-18-

## IV. Absolute and Qualified Immunity

Defendants assert that Appellant cannot pursue his claims against them because they retain both absolute and qualified immunity. The district court did not address this issue, since it determined that Appellant's constitutional rights were not violated under § 1983. See Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir. 1994) ("To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all."). Having found such a violation, however, we now consider Defendants' immunity claims.

Defendants correctly aver that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Ruark v. Solano, 928 F.2d 947, 950 (10th Cir. 1991). Thus, neither POST, as a governmental entity, nor the individual Defendants, in their official capacities for the State, may be sued for damages under that section. However, as Appellant points out, this does not provide the individual Defendants with absolute immunity. The Supreme Court in Will was careful to note: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. 58, 71 n.10 (1989) (citations and quotations omitted). To that end,

Appellant's complaint includes a number of requests for injunctive relief. See Complaint, Aplt. App. at 29. The complaint seeks to compel the individual Defendants to: (1) provide him with copies of all information, records, and documents in their possession that pertain to him; (2) cease disseminating any information about Appellant that is not authorized by statute; (3) purge its files of false information not authorized by statute. See id.; see also Reply Br. at 14-15. Thus, the individual Defendants do not retain absolute immunity from Appellant's requests for injunctive relief.

Next, Defendant Groll—POST's director—claims qualified immunity from Appellant's suit for damages against him in his personal capacity. Defendant Groll contends that § 1983 claims "require a showing of an affirmative link between the defendant's conduct and any constitutional violation," and that Appellant has failed to allege such a link. Appellee's Br. at 7 (quoting Summers v. Utah, 927 F.2d 1165, 1167 (10th Cir. 1991) (quoting magistrate judge's report and recommendation); see also Rizzo v. Goode, 423 U.S. 362, 370-77 (1976). Appellant responds by arguing that neither Summers nor Rizzo required that an affirmative link be alleged in the complaint; rather, such a link was required only as part of evidentiary proceedings. See Reply Br. at 15. However, we have previously required plaintiffs to allege the affirmative link in their complaints, although with little explanation on that point. See Meade v. Grubbs, 841 F.2d

1512, 1527-28 (10th Cir. 1988). Moreover, we have specified this requirement previously in a number of unpublished opinions. See Dametz v. Romer, No. 93-1213, 1993 WL 495066, at *1 (10th Cir. Dec. 1, 1993) (affirming dismissal because the plaintiff "fail[ed] to allege facts demonstrating that the Defendants personally participated in the alleged constitutional violations, or acquiesced in the alleged wrongdoing") (citations omitted); Ernst v. Gunter, No. 93-1015, 1993 WL 436833, at *2 (10th Cir. Oct. 29, 1993) (holding that the plaintiff "fail[ed] to allege sufficient facts to establish an 'affirmative link'"); Chamberlain v. City of Albuquerque, No. 92-2089, 1993 WL 96883, at *5 (10th Cir. March 29, 1993) (holding that "Plaintiff must aver facts sufficient to support [such] a determination . . . . Plaintiff has not alleged any such facts.") (citation omitted); Richardson v. Romer, No. 91-1410, 1992 WL 73048, at *1 (10th Cir. April 9, 1992) (bare allegation that superior officers should have known of constitutional violations did not state a claim for relief under § 1983). This allegation requirement has been adopted by other circuits. See, e.g., Rivera v. Green, 775 F.2d 1381, 1384 (9th Cir. 1985), cert. denied, 475 U.S. 1128 (1986); Alexander v. Ware, 714 F.2d 416, 420 (5th Cir. 1983); Rogers v. Rulo, 712 F.2d 363, 366 (8th Cir. 1983). We hold that the affirmative link described in Rizzo and its progeny must be alleged in the complaint as well as proven at trial.

Nevertheless, Appellant contends that, even if we require him to allege an

affirmative link between Defendant Groll's actions and the constitutional violations discussed in this case, Appellant has sufficiently done so. Appellant's complaint alleges that the "Defendants": (1) wrongfully disclosed the improper materials to his potential employers with "the specific intent to deter [his] employment as a police officer;" (2) "wrongfully and unlawfully made recommendations to law enforcement officers not to hire [him];" and (3) "authorized dissemination" "to third parties, without notice and opportunity to be heard." Aplt. App. at 25-27. Appellant further points out that the term "Defendants" is defined in the complaint to include Defendant Groll, and thus the affirmative link between Defendant Groll and the constitutional violations is sufficiently alleged. Reply Br. at 16. While the link is rather loosely demonstrated, our system of liberal pleading persuades us to accept Appellant's allegation without parsing responsibility to the various Defendants specifically. Therefore, Defendant Groll is not entitled to qualified immunity based on Appellant's failure to allege an affirmative link between Defendant Groll's actions and the constitutional violations incurred. We add, however, that Appellant must still prove that this link existed on remand to the district court.

### V. Attorney Fees

Finally, Appellant requests an award of attorney fees and costs for this appeal under 42 U.S.C. § 1988. The request for attorney fees is premature. It

-22-

must abide the determination on the merits.  Appellant is awarded his costs on appeal.

For the foregoing reasons, the decision of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings not inconsistent with this opinion.