**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 14 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANTHONY WILSON,

    Plaintiff-Appellant,

v.

DEPARTMENT OF PUBLIC SAFETY,
and DERRICK WARE, individually
and in his official capacity as a Trooper
for the Oklahoma Highway Patrol,

    Defendants-Appellees.

No. 02-6236

(W.D. Oklahoma)

(D.C. No. CIV-02-11-L)

---

**ORDER AND JUDGMENT** [*]

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

Proceeding pro se and in forma pauperis (IFP), Anthony Wilson filed this

civil action against the Oklahoma Department of Public Safety and Oklahoma

Highway Patrol Trooper Derrick Ware, alleging that Trooper Ware stopped Mr.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of res judicata, collateral estoppel, and law of the case. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Wilson's car because of Mr. Wilson's race. Mr. Wilson asserted that Trooper Ware violated his Fourth and Fourteenth Amendment rights and that the Department of Public Safety violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Mr. Wilson also asserted tort claims under Oklahoma law.

The district court dismissed Mr. Wilson's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and also concluded that it was frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). Additionally, the court imposed conditions upon Mr. Wilson's filing of future lawsuits in the Western District of Oklahoma. Upon review of the record, we conclude that the district court erred in dismissing Mr. Wilson's complaint. Accordingly, we grant Mr. Wilson's motion to proceed IFP in this appeal, vacate the district court's order of dismissal (including the conditions for future filings), and remand for further proceedings.

## I. BACKGROUND

Mr. Wilson's complaint alleges that, late in the evening on October 10, 2001, Trooper Ware stopped his car without legal justification. Mr. Wilson states that he "obeyed all traffic laws, drove at the rate of the posted speed limit, wore his seatbelt, and stayed within his respective lane." Rec. doc. 1, at 2 (Complaint, filed Jan. 3, 2002). According to Mr. Wilson, Trooper Ware stated that he had stopped Mr. Wilson because Mr. Wilson was "laying down in his seat" and could

-2-

not see the road.  Id.  However, Mr. Wilson alleges,  the real reason for the stop was that Trooper Ware "targeted [Mr. Wilson] for stop and detention due to the fact [that] [Mr. Wilson] is a black male in a predominantly non-minority area during late night."  Id.  Mr. Wilson adds that Trooper Ware threw Mr. Wilson's insurance verification card at him, striking him in the arm.  He asserted claims under the Fourth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, and Oklahoma law.

The district court dismissed Mr. Wilson's claims on alternative grounds. The court first concluded that Mr. Wilson's complaint failed to state a claim upon which relief could be granted.  Fed. R. Civ. P. 12(b)(6).  In the alternative, the court held that Mr. Wilson's complaint was frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

As to the claim that Trooper Ware lacked a legitimate ground for the traffic stop, the court noted that the complaint acknowledged that Trooper Ware's stated reason for making the stop was that Mr. Wilson's seat was reclined.  The district court then noted that Mr. Wilson had failed to allege that his seat was not reclined.  See Rec. doc. 30, at 6 (Dist. Ct. Order, filed June 20, 2002) (stating that "[o]ther than plaintiff's own opinions, there are no facts alleged to support plaintiff's claim that the stop was not conducted for the reason given,"  "[t]he obvious fact tending to support a claim that the Trooper's reason was false would

be that the plaintiff's seatback was not reclined," and "[t]his fact is missing from the plaintiff's complaint").  As to Mr. Wilson's allegations under Title VI, the court concluded that the failure to contest the legitimate basis for the traffic stop warranted dismissal of that claim as well.  Id. at 9.  Finally, the court held that the Oklahoma Department of Public Safety was entitled to Eleventh Amendment immunity from Mr. Wilson's state law claims.  Id. at 11.

The district court then held that Mr. Wilson's complaint "lacks well-pleaded factual allegations and relies entirely upon allegations of conclusions or opinions."  Id. at 14.  It therefore concluded that the complaint was frivolous.

Finally, the court noted that since 1998, Mr. Wilson had filed eight other lawsuits in the Western District of Oklahoma.  Although the court did not find that these other actions were frivolous, id., it did state that "the frivolous nature of this lawsuit, combined with plaintiff's previous litigation history, suggests that [Mr. Wilson] may be perilously close to abusing the privilege of bringing in forma pauperis actions in this court."  Id. at 15.  Accordingly, the court imposed the following restrictions upon Mr. Wilson: (1) in any future complaints, Mr. Wilson must list all previous lawsuits he had filed in the Western District of Oklahoma, including the case number; and (2) in any future complaints, Mr. Wilson must also state that the court dismissed this case on the alternative ground of frivolousness.  Id.

## II.  DISCUSSION

On appeal, Mr. Wilson contends that the district court erred in dismissing his constitutional claims and his Title VI claims.  He also challenges the imposition of conditions on future filings.  He does not challenge the dismissal of his state law claims.

Additionally, Mr. Wilson moves to proceed IFP in this appeal.  We may only grant such a motion if Mr. Wilson "show[s] a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal."     DeBardeleben v. Quinlan , 937 F.2d 502, 505 (10th Cir. 1991).  There is no dispute that Mr. Wilson meets the financial requirements of IFP.  As we discuss below, he also meets the other requirements.

### A.  Fourth and Fourteenth Amendment Claims

We begin our analysis with Mr. Wilson's two constitutional claims—that the traffic stop conducted by Trooper Ware on the evening of October 11, 2001 violated Mr. Wilson's rights under the Fourth and Fourteenth Amendments.  These two constitutional provisions support different causes of action.

As the district court observed, under the Fourth Amendment, a traffic stop must be reasonable, that is, the stop must be "based on an observed traffic

violation" or "the police officer [must have a] reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Rec. doc. 30, at 5 (citing United States v. Bustillos-Munoz, 235 F.3d 505, 512 (10th Cir. 2000)); see also United States v. Ramstad, 308 F.3d 1139, 1144 (10th Cir. 2002) (stating that a traffic stop is justified if a police officer has "a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction"). If an officer has such a reasonable suspicion, it is "irrelevant that the officer may have had other subjective motives for stopping the vehicle." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995); accord Whren v. United States, 517 U.S. 806, 813 (1996) (stating that "we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"); see also United States v. Neu, 879 F.2d 805, 808 (10th Cir.1989) ("A traffic stop . . . is ordinarily a limited seizure within the meaning of the Fourth Amendment" and "is subject to the less rigorous requirements of Terry v. Ohio, 392 U.S. 1 (1968), rather than the more stringent constitutional strictures of a custodial arrest.") (full citation omitted).

The Fourteenth Amendment's requirements are somewhat different. The Supreme Court has stated that the selective enforcement of the law through practices like racial profiling violates the Equal Protection Clause. See Whren,

-6-

517 U.S. at 813 ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race [,] [b]ut the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."). In that context, the officer's subjective motivations are relevant. See Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 533 (6th Cir. 2002) (stating that in Whren the Supreme Court confirmed that "an officer's discriminatory motivations for pursuing a course of action can give rise to an Equal Protection claim, even where there are sufficient objective indicia of suspicion to justify the officer's actions under the Fourth Amendment"); United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997) ("The Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures.").

Here, the district court analyzed Mr. Wilson's complaint under the Fourth Amendment standards and concluded that it failed to state a claim. We engage in de novo review of that decision, applying the same standards as the district court under Fed. R. Civ. P. 12(b)(6). Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1149 (10th Cir. 2001). We view all of Mr. Wilson's material allegations as true and construe the complaint in his favor. Id. We may uphold

the dismissal only if Mr. Wilson can prove no set of facts entitling him to relief.
Id.

Additionally, because Mr. Wilson is proceeding pro se, we must construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, even pro se litigants may not rely on conclusory allegations. Id.

In our view, the issue of the sufficiency of Mr. Wilson's complaint is a close one. However, we note that in dismissing Mr. Wilson's Fourth Amendment claim, the district court stated that "there is no dispute that the stated reason [given by Trooper Ware] for the traffic stop was plaintiff's reclined position while driving" and that "[o]ther than plaintiff's own opinions, there are no facts alleged to support plaintiff's claim that the stop was not conducted for the reason given." See Rec. doc. 30, at 6 (Dist. Ct. Order, filed June 20, 2002). In so reasoning, the district court read Mr. Wilson's complaint too narrowly. In particular, Mr. Wilson did allege that Trooper Ware told him that his car had been stopped because Mr. Wilson "'was laying down in his seat' and could not see the

road." Rec. doc. 1, at 2 (emphasis added). Thus, according to Mr. Wilson, whose allegations we must accept as true in a 12(b)(6) posture, Trooper Ware told him not merely that he had been reclining in his seat but that he had been reclining in his seat to such a degree that he could not see the road. [1]

Especially under our liberal standards for pro se litigants, Mr. Wilson's complaint controverts Trooper Ware's alleged statement that Mr. Wilson could not see the road: Mr. Wilson alleged that at the time of the stop, he "obeyed all traffic laws, drove at the rate of the posted speed limit, wore his seatbelt, and stayed within his respective lane." Id. Such safe driving would not be possible if in fact Mr. Wilson could not see the road. Accordingly, Mr. Wilson's pro se complaint adequately alleges that Trooper Ware lacked the reasonable suspicion required by the Fourth Amendment in order to make a traffic stop. [2]

---

[1] To the extent that Mr. Wilson suggests that reclining in one's seat in an unsafe manner (e.g., to such a degree that he could not see the road) could not constitute a "violat[ion] of . . . one of the multitude of applicable traffic and equipment regulations of the jurisdiction" see Ramstad, 308 F.3d at 1144, we disagree. Here, however, under the liberal 12(b)(6) standards for pro se litigants, we read his complaint to allege that he was not so reclining.

[2] We emphasize that Mr. Wilson's statements about the manner in which he was driving may not be sufficient to avoid summary judgment in favor of the defendants. The Fourth Amendment's reasonableness inquiry addresses whether Trooper Ware had a reasonable suspicion of a traffic violation, not whether there was an actual violation or whether Mr. Wilson believed that he had committed such a violation. Accordingly, if the defendants offer evidence to support their contention that Trooper Ware possessed a reasonable suspicion of a traffic violation, Mr. Wilson will be required, in order to avoid summary judgment, to

(continued...)

Similarly, we conclude that Mr. Wilson has adequately pled a violation of the Fourteenth Amendment's Equal Protection Clause on the basis of discriminatory enforcement of the traffic laws on the basis of his race. Although somewhat inartfully pled, his complaint alleges that the reason for the traffic stop provided by Trooper Ware was not legitimate and that the real reason for the stop was that Mr. Wilson was "a black male in a predominantly non-minority area during late night." Id. Although Mr. Wilson's allegations may or may not be supported by further development of the record, they are sufficient to state a claim. See Whren, 517 U.S. at 813; Farm Labor Organizing Comm., 308 F.3d at 533 ([I]f the plaintiffs can show that they were subjected to unequal treatment based upon their race or ethnicity during the course of an otherwise lawful traffic

---

[2](...continued)
controvert that evidence with specific evidence of his own that reasonable suspicion was lacking. See, e.g., Valance v. Wisel, 110 F.3d 1269, 1276 (7th Cir. 1997) (concluding that plaintiff motorist's statement that he "[did] not currently 'believe' [that] he crossed the center line" reflected "less than definitive knowledge [that] [did] not cast sufficient doubt on what the officer reasonably believed at the time," therefore affirming the district court's grant of summary judgment to the defendant officer).

Here, however, we must construe the complaint in the light most favorable to Mr. Wilson, and we do not have the benefit of evidentiary submissions from the defendants. See id. at 1275 (noting that "[w]e put aside the complaint's [factual] allegation [that the officer lacked reasonable suspicion] because . . .such an allegation is insufficient to create a factual dispute on summary judgment").

stop, that would be sufficient to demonstrate a violation of the Equal Protection Clause.").

### B. Title VI Claim

The district court also dismissed Mr. Wilson's claim under Title VI of the Civil Rights Act of 1964. In order to prevail on such a claim, Mr. Wilson must prove that the defendants engaged in racial discrimination. See Baker v. Board of Regents of State of Kan., 991 F.2d 628, 631 (10th Cir. 1993) ("The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance.").

The district court based its dismissal on its conclusion that Mr. Wilson had failed to adequately allege that Trooper Ware made the traffic stop because of Mr. Wilson's race. Because Mr. Wilson has adequately alleged such a discriminatory motive, we conclude that the district court erred in dismissing this claim as well. As with Mr. Wilson's Fourth Amendment claim, further development of the record may or may not undermine Mr. Wilson's assertions. However, affording the complaint the benefit of all favorable factual inferences, dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is not warranted.

## C. Qualified Immunity

Finally, we note that defendants have asserted on appeal that, even if this court concludes that Mr. Wilson has adequately alleged a violation of his constitutional rights, the claims against Trooper Ware should be dismissed because he is entitled to qualified immunity. The defendants contend that Mr. Wilson's complaint "wholly fail[s] to identify clearly established law of which Trooper Ware was in violation." Aplees' Br. at 10.

We disagree with the defendant's contention that Trooper Ware is entitled to qualified immunity at this early stage of the litigation. The Fourth Amendment requirement that traffic stops must be based on at least a reasonable suspicion of a traffic violation is clearly established, see Terry, 392 U.S. at 20-27; United State v Neu, 879 F.2d at 808, as is the Fourteenth Amendment prohibition of racially-based stops, see Whren, 517 U.S. at 813.

## III. CONCLUSION

Accordingly, we GRANT Mr. Wilson's motion to proceed IFP, VACATE the district court's order of dismissal (including the conditions imposed upon Mr.

Wilson's future filings), and REMAND the case for further proceedings

consistent with this order and judgment. [3]

Entered for the Court

Per Curiam

---

[3] Because we vacate the district court's order on the basis of the 12(b)(6) analysis, we also reject the district court's alternative holding that Mr. Wilson's complaint is frivolous.