**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 18, 2024**

**Jane K. Castro**
**Chief Deputy Clerk**

_____

KOLETTE SMITH,

     Plaintiff - Appellant,

v.

BRIAN WILLIAMS; LABETTE
COUNTY MEDICAL CENTER, d/b/a
Labette Health,

     Defendants - Appellees.

No. 23-3227
(D.C. No. 2:20-CV-02224-EFM)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **KELLY**, and **FEDERICO**, Circuit Judges.
_____

This case stems from the termination of the independent contractor

relationship between Plaintiff-Appellant, Dr. Kolette Smith, and Defendants-

Appellees, Brian Williams and Labette County Medical Center ("Labette Health")

(collectively "Defendants").  Dr. Smith appeals from the district court's grant of

summary judgment to Defendants on her claims for (1) denial of a property interest

without due process under 42 U.S.C. § 1983, and (2) tortious interference with

prospective business advantage under Kansas law.  Smith v. Williams,

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

No. 20-CV-2224, 2023 WL 6462904, at \*1 (D. Kan. Oct. 4, 2023).  Our jurisdiction

arises under 28 U.S.C. § 1291, and we affirm.

## Background

The parties do not dispute the material facts of this case.  I Aplt. App. 53 n.1.

Dr. Smith is a licensed physician in Kansas.  Id. at 53.  Labette Health is a county

hospital with its primary facility located in Kansas.  Id. at 73–74.  Brian Williams has

served as President and CEO of Labette Health since September 2015.  Id. at 53.

Dr. Smith worked as a physician at Labette Health from 1999 until January 2018.  Id.

This court need not discuss the parties' contractual relationship at length.

Suffice it to say that multiple written agreements reflected Dr. Smith's independent

contractor relationship with Labette Health, but none of those agreements were

signed by all parties.  See III Aplt. App. 495–505, 509–18, 523–25.  Each of these

agreements contained a non-compete provision stating that Dr. Smith would not

provide health care services at other care entities within a 60-mile driving distance of

Labette Health during the term of the agreement or for two years following its

termination.  See id. at 502–03, 516, 524.  Labette Health paid Dr. Smith pursuant to

each of the agreements even though they were unsigned.  IV Aplt. App. 634.  In the

fall of 2017, after failing to negotiate a new independent contractor agreement,

Mr. Williams informed Dr. Smith that Labette Health was terminating all of her

active agreements, and that she would be subject to the non-compete provisions in

those agreements.  Id. at 634–35; III Aplt. App. 409–11.

In January 2018, Dr. Smith entered into an independent contractor agreement

2

with Docs Who Care, a company that contracts with hospitals to provide temporary physician services.  II Aplt. App. 174–75, 207–08.  This agreement did not guarantee Dr. Smith any specific hours or shifts.  Id. at 178, 208.  In the year following her departure from Labette Health, Dr. Smith worked a total of 2,649 hours through Docs Who Care at nearly a dozen hospitals around Kansas.  Id. at 174–75, 209.  Two such hospitals where Dr. Smith sought and received clinical privileges through Docs Who Care were Newton Medical Center and McPherson Hospital.  I Aplt. App. 60.

In February 2019, Dr. Smith worked a shift at Wilson Medical Center, which was within the 60-mile radius of the non-compete area.  III Aplt. App. 526–31.  Mr. Williams contacted Docs Who Care to inform them that he believed that Dr. Smith's non-compete agreement was enforceable even though it was unsigned.  Id. at 531–33.  Docs Who Care told Mr. Williams that it would honor his request regarding Dr. Smith.  Id. at 527.  Mr. Williams then asked that Dr. Smith request an exception to her non-compete and stated that he would grant the exception.  Id. at 526.

The following month, Docs Who Care told Dr. Smith that Wilson Medical Center had another shift available for her.  II Aplt. App. 193–94.  Docs Who Care informed Dr. Smith that they had Mr. Williams's "okay" in writing, and that the shift was hers if she wanted it.  Id. at 251.  Nonetheless, Dr. Smith declined this shift at Wilson Medical Center.  Id. at 194.

Dr. Smith sued Labette Health and Mr. Williams.  I Aplt. App. 16–32.  After

3

the district court considered motions to dismiss,[1] the remaining claims were for (1) denial of a property interest under § 1983; (2) tortious interference with prospective business advantage; (3) false light invasion of privacy; and (4) defamation.  Id. at 60.  Both parties filed motions for summary judgment on all four claims.  Id.

The district court found that it was unnecessary to decide whether the parties had a valid contract because Dr. Smith's claims failed on other grounds.  Id. at 62.  First, the court granted Defendants summary judgment on Dr. Smith's § 1983 claim because it found that "the evidence demonstrates that [Dr. Smith] was able to fully utilize her medical license after leaving Labette Health[.]"  Id. at 63.  The court emphasized Dr. Smith's hours of work at various hospitals after leaving Labette Heath and found that there was "no evidence showing that Defendants' actions destroyed the value or utility of [Dr. Smith's] medical license[.]"  Id.

Next, the district court granted Defendants summary judgment on Dr. Smith's tortious interference with prospective business advantage claim.  Id. at 64.  The court first rejected Dr. Smith's arguments that she lost business expectancies at Newton Medical Center and McPherson Hospital because in both instances she received clinical privileges at those hospitals.  Id.  The court then rejected Dr. Smith's argument that she lost a business expectancy at Wilson Medical Center because "the

---

[1] Relevant to this appeal, the district court previously dismissed Dr. Smith's § 1983 claim for denial of a liberty interest without due process.  I Aplt. App. 63 n.18.

evidence demonstrates that Defendants' actions did not cause the loss of this 'business expectancy,' but rather Plaintiff turned it down." Id. at 65.

The district court also granted Defendants summary judgment on Dr. Smith's false light invasion of privacy and defamation claims, but Dr. Smith does not challenge those rulings on appeal. Id. at 65–68; Aplt. Br. at 2.

## Discussion

We review the district court's grant of summary judgment de novo. N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs., 994 F.3d 1166, 1171 (10th Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the suit, and a dispute is "genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." N.M. Oncology, 994 F.3d at 1171 (quotations omitted). Applying this standard, we view all evidence in the light most favorable to the nonmoving party. LifeWise Master Funding v. Telebank, 374 F.3d 917, 927 (10th Cir. 2004). Still, "the nonmoving party must show more than 'the mere scintilla of evidence in support of [its] position . . . there must be evidence on which the jury could reasonably find for the nonmoving party.'" N.M. Oncology, 994 F.3d at 1171–72 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Thus, the nonmoving party must point to "significantly probative" evidence that could support a judgment. Anderson, 477 U.S. at 249–50.

**A. The District Court Properly Granted Defendants Summary Judgment**

5

**on Dr. Smith's 42 U.S.C. § 1983 Claim.**

Under § 1983, an individual may sue alleging deprivation of a recognized property right without procedural due process. See Stidham v. Peace Officer Standards And Training, 265 F.3d 1144, 1149–50 (10th Cir. 2001). Importantly, "[p]rocedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest." Id. at 1149. It is well-established that individuals possess a recognized property interest in their license to practice their profession. See id. at 1149–50 (citing Bell v. Burson, 402 U.S. 535, 539 (1971)); Keney v. Derbyshire, 718 F.2d 352, 354 (10th Cir. 1983).

Dr. Smith argues that Defendants deprived her of her property interest in her Kansas medical license. Aplt. Br. at 16–19. To be sure, Dr. Smith does not dispute the fact that her medical license was never actually revoked, and that it remains unrestricted. IV Aplt. App. 642. Rather, Dr. Smith argues that Defendants' actions resulted in the "effective revocation" of her medical license. Aplt. Br. at 16–23.

Indeed, formal revocation of a license to practice one's profession is not always required to assert a claim for deprivation of a property interest in that license. Stidham, 265 F.3d at 1152–53. Rather, in some circumstances, actions that result in the "effective revocation" of that license can constitute a deprivation of a property interest. Id. For example, in Stidham, this court held that a peace officer could assert a claim that Defendants deprived him of his property interest in his peace officer certification even though that certification was never revoked or suspended. Id. In that case, the officer's certification was "effectively revoked" because the result of

6

Defendants' dissemination of false allegations about the officer was that he could not use his certificate to obtain employment. Id. at 1153. Thus, this court held that a plaintiff seeking to prove that a license to practice has been "effectively revoked" must establish that the Defendants' actions "destroy[ed] the value or utility" of that license. Id.; see also Reed v. Village of Shorewood, 704 F.2d 943, 947–49 (7th Cir. 1983), overruled in part by Brunson v. Murray, 843 F.3d 698 (7th Cir. 2016) (holding that the plaintiff's liquor license had been effectively revoked where defendants' "relentless" harassment destroyed the value of plaintiffs' business and forced them to shut down their bar).

Here, however, the evidence demonstrates that Dr. Smith has been able to use her Kansas medical license to acquire employment since leaving Labette Health. II Aplt App. 174. Indeed, Dr. Smith does not point to a single instance where she sought clinical privileges at a Kansas hospital and did not receive them. See id. at 174–75. Rather, the evidence shows that Dr. Smith was able to use her Kansas medical license to work 2,649 hours at nearly a dozen hospitals in the year after she left Labette Health. Id. at 174, 209. This is unlike Stidham, where "[a]bsent relief by this court, Defendants could continue to prevent Appellant from obtaining employment." 265 F.3d at 1153. Thus, the district court correctly held that "there is no evidence showing that Defendants' actions destroyed the value or utility of [Dr. Smith's] medical license, effectively or otherwise." [2] I Aplt. App. 63.

---

[2] We reject Dr. Smith's arguments based on Corbitt v. Andersen, 778 F.2d 1471 (10th Cir. 1985) and Watson v. University of Utah Medical Center, 75 F.3d 569

7

**B. The District Court Properly Granted Defendants Summary Judgment on Dr. Smith's Tortious Interference Claim.**

Under Kansas law, the elements of a tortious interference with prospective

business advantage claim are:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

Turner v. Halliburton Co., 722 P.2d 1106, 1115 (Kan. 1986); Brown v. Univ. of

Kansas, 16 F. Supp. 3d 1275, 1291 (D. Kan. 2014), aff'd 599 F. App'x 833 (10th Cir.

2015).  Plaintiff must also prove defendant acted with malice.  Turner, 722 P.2d

at 1115.

As a threshold issue, Dr. Smith cannot expand the scope of her tortious

interference claim to include business expectancies that she did not raise

earlier.  See Gale v. Cty. & Cnty. Of Denver, 962 F.3d 1189, 1194 (10th Cir.

2020).  Dr. Smith identified three business expectancies that Defendants

---

(10th Cir. 1996).  These arguments are unpersuasive because they rely on sections of those cases which dealt with liberty interest claims under § 1983, not property interest claims.  Aplt. Br. at 18–19; Corbitt, 778 F.2d at 1474–75; Watson, 75 F.3d at 578.  The district court dismissed Dr. Smith's liberty interest claim over a year before the order granting Defendants summary judgment, which is presently before us on appeal.  I Aplt. App. 63 n.18.  We agree with the district court that Dr. Smith improperly continues to reference liberty interest cases, and "cannot again attempt to resurrect this failed claim."  Id.

allegedly interfered with — specifically expectancies with (1) Newton Medical Center in 2021, (2) McPherson Hospital in 2021, and (3) Wilson Medical Center in 2019. I Aplt. App. 64–65. She now argues for the first time on appeal that she "lost the business expectancy that she possessed with Docs Who Care" to work "in an area of 11,310 square miles." Aplt. Br. at 25. We will not consider this waived theory that was never presented to the district court.[3] See Gale, 962 F.3d at 1194.

Returning to the arguments properly preserved, the district court correctly held that Dr. Smith did not lose any business expectancies with Newton Medical Center or McPherson Hospital.[4] I Aplt. App. 64. Indeed, the evidence shows that Dr. Smith received privileges at both hospitals. II Aplt. App. 185, 211.

As to Wilson Medical Center, the district court correctly concluded that "Defendants' actions did not cause the loss of this 'business expectancy,' but rather [Dr. Smith] turned it down." I Aplt. App. 65. Dr. Smith argues that Defendants

---

[3] Kansas law requires that plaintiffs asserting tortious interference claims prove that they were "reasonably certain" to have realized a business expectancy but for defendant's conduct. Turner, 722 P.2d at 1115. Here, contrary to Dr. Smith's claim that she had some expectancy to work within 11,310 square miles of her home, the evidence shows that Dr. Smith's independent contractor arrangement with Docs Who Care did not guarantee her any specific hours or shifts at hospitals in that area. II Aplt. App. 178. Thus, even if we considered this theory, it is at best speculative that Dr. Smith would have realized this business expectancy but for Defendants' conduct.

[4] It is unclear whether Dr. Smith challenges this conclusion on appeal, as her brief's "timeline establish[ing] the loss of a business expectancy" makes no mention of Newton Medical Center or McPherson Hospital. Aplt. Br. at 24–25.

interfered with this business expectancy when Mr. Williams emailed Docs Who Care claiming that Dr. Smith would be in violation of her non-compete if she worked at Wilson Medical Center. Aplt. Br. at 24–25. Dr. Smith then highlights a statement from Docs Who Care's Chief Operating Officer on February 27, 2019, that it would "honor [Mr. Williams's] request" regarding Dr. Smith's non-compete.[5] Id. at 25. However, Dr. Smith ignores Docs Who Care's subsequent email offering that shift to Dr. Smith and informing her that it had Mr. Williams's "okay" in writing. II Aplt. App. 251. Thus, even when viewing the evidence in the light most favorable to Dr. Smith, a reasonable jury could not find that she lost this business expectancy due to Defendants' conduct when she turned it down herself. Id. at 194, 251.

**AFFIRMED**.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[5] Dr. Smith also points to a statement by a Docs Who Care employee that she would not be offered any job opportunities within an hour of her home. Aplt. Br. at 25. The only support for this statement in the record is Dr. Smith's own testimony. II Aplt. App. 177. The statement is inadmissible hearsay as an out of court statement by a third party for its truth, and of course summary judgment turns on evidence that could be in a form admissible at trial. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995). Moreover, the statement is belied by the record, which shows that Docs Who Care offered Dr. Smith opportunities to work at hospitals within an hour of her home, including the 2019 shift at Wilson Medical Center. IV Aplt. App. 638, 640, 645.